HOWARD C. CONRADDY, plaintiff in error, *v.* THE PEOPLE, defendants in error.

If a felony has actually been committed, an officer, in arresting the offender, or preventing his escape, will be justified in taking his life, provided there is an absolute necessity for his doing so; it is otherwise in case of an arrest for a misdemeanor.

---

Conraddy v. The People.

Where no process has been issued, a homicide can only be justified, even by an officer, by showing the actual commission of a felony, and that there was a positive necessity to take life in order to arrest or detain the felon.

It is not a defense to an officer, in such a case, to show that he had reasonable ground to believe that the deceased had been guilty of felony, and that he had also reasonable ground to believe that the deceased would otherwise accomplish an escape.

An exception to an expression by the court of an opinion on a question of fact, in a charge to the jury, is not available.

THE prisoner was indicted for the murder of Paul O'Neil, and pleaded not guilty. The issue came·on for trial at the Kings Oyer and Terminer, in April, 1862, before Mr. Justice LOTT and the Justices of the Sessions.

The prisoner was a police officer, and had arrested the deceased without warrant, and shot at him and killed him, at the time he was escaping from his custody.

After the testimony had closed, and the jury had been addressed by the counsel for the respective parties, the presiding justice charged the jury as follows:

"I charge that the evidence in the case fairly, in the opinion of the court, warrants the conclusion — but of this the jury are to judge — that, on the morning of the 18th of March last, the deceased, Paul O'Neil, committed an assault and battery on his wife, constituting a misdemeanor, but that the act did not amount to a felony; that the prisoner, being at the time a police officer, arrested the deceased therefor without a warrant authorizing such arrest; that the prisoner was taking him to the station house for detention; that the deceased, being under such arrest, and while on the way to the station house, escaped from the officer (the prisoner), and that the officer pursued him, and in such pursuit, and when deceased had reached a considerable distance from the officer, he was shot by a pistol-shot from a pistol of the prisoner in his hands and shot off by him; that the force of the shot was mostly spent at the time, and that such shot caused the death of O'Neil. Assuming such conclusion to be undisputed, the question arises whether the prisoner was justified by the law in the commission of that act."

The counsel of the prisoner asked the court to charge that, "If the prisoner had reasonable ground to believe, and did believe, that the deceased had been guilty of a felony, and having arrested him therefor, if the prisoner attempted to escape from custody, and there was reasonable ground to believe that the deceased would otherwise accomplish such escape, the prisoner was justified in discharging his pistol at him to prevent such escape."

The court declined so to charge, but charged the reverse: that, assuming the propositions of fact aforesaid to be true, that the prisoner was not justified in discharging his pistol at him to prevent his escape, if such discharge resulted in the death of deceased.

The counsel for the prisoner excepted to the refusal and to the charge, and also to the expression by the court of the opinion expressed by the court in said charge.

Whereupon the jury rendered a verdict of guilty of man-slaughter in the fourth degree, and the prisoner was sentenced to imprisonment for one year in the penitentiary of Kings county.

A writ of error was sued out in behalf of the prisoner, and the record removed into this court.

*G. T. Jenks*, for the plaintiff in error.

I. The exception to the charge was well taken.

The judge's opinion, expressed in the charge, had all the weight and directness of a direction to the jury to find.

The parenthetical clause, "but of this the jury are to judge," does not save the charge from this objection. It was a mere straw in the way of the positive statement of facts immediately following.

There can be no doubt that the jury, under the charge, were deprived of the only duty which they had to perform, which was to answer the question, was the act of Paul O'Neil, for which he was arrested, a felony?

Again, the jury were not to judge whether, in the opinion of the court, the evidence fairly warranted the conclusion, but

Conraddy *v.* The People.

they were to determine, among other things, whether any other conclusion was not warranted by the evidence in favor of the prisoner's innocence.

II. The exception to the refusal to charge was well taken. If the acts of the officer are necessary to apprehend a person charged with felony, he is justified, even if the acts cause the death of such person.

If the officer might lawfully take life while endeavoring to apprehend such person, it is difficult to perceive why the officer is not equally protected in his acts done to retain the custody of such person.

The act of fleeing is as much a resistance to the efforts of the officer as is a physical contest with him.

The life is taken by an act designed to take or retain a prisoner, and it is not necessary that the officer should be a combatant, defending his own life or resisting an attack upon himself. (*Barb. Crim. Law*, 38, *and cases cited;* 4 *Black. Com.*, *p.* 179, *and cases cited in foot note;* 3 *Greenl. Ev.*, § 115.)

*John Winslow* (District Attorney), for the defendants in error.

I. It was not improper nor illegal for the court to express the hypothetical opinion excepted to.

The due and proper administration of justice may require a distinct intimation from the court. This is especially true where juries manifest a disposition to evade the law or usurp the province of the court.

In the case at bar, the facts were left to the jury, with the statement from the court that, if certain facts had been proved, then certain legal results must follow.

It has been distinctly adjudicated that such instructions are lawful and proper. (*The People* v. *Thayer*, 1 *Park. Crim. R.*, 596, *per* WALWORTH, J.)

In the case of *Gardiner* v. *Pickett* (19 *Wend. R.*, 186), the court expressed an opinion to the jury as to whether a certain material fact had been proven. It was there held that merely expressing an opinion was not irregular.

II. The court properly declined to charge that, " if the prisoner had reasonable ground to believe, and did believe, that the deceased had been guilty of a felony, and having arrested him therefor, if the prisoner attempted to escape from custody, and there was reasonable ground to believe that the deceased would otherwise accomplish such escape, the prisoner was justified in discharging his pistol at him to prevent such escape."

The court correctly charged, " that, assuming the propositions of fact aforesaid to be true, the prisoner was not justified in discharging his pistol at him to prevent his escape, *if such discharge resulted in the death of deceased.*"

The deceased, prior to the arrest, committed, if any offense at all, an assault and battery on his wife — a simple misdemeanor.

It is well settled that an officer, having lawful custody of his prisoner, who has committed a misdemeanor only, cannot kill him to prevent an escape, not even if it is certain that the prisoner will escape unless killed.

But where the prisoner has committed a felony, his life may be taken to prevent an escape. But even in a case of felony, it will be manslaughter to kill the prisoner unless it is absolutely necessary, and every other means at hand is insufficient.

Blackstone says, " it is murder to shoot or otherwise unlawfully kill a person committing a misdemeanor, although he could not otherwise have been taken." (4 *Black. Com.*, 201 ; 1 *Wheeler's Cr. Cases*, 269.)

" But under circumstances," it is said (1 *Hale P. C.*, 481, cited in 2 *Bishop's Cr. L.*, § 578), " it may amount only to manslaughter if it appear that death was not intended."

But in cases of felony, if the felon fly from justice he may be killed. (*Bishop, supra*, § 577.)

Where a constable endeavored to arrest a man committing a misdemeanor, but the man refused to stop on demand, and so the constable fired a pistol and hit him in the leg, the constable was convicted of felony.

In this case the man was actually guilty of felony, it being

Conraddy *v.* The People.

the second offense, petit larceny, but inasmuch as the fact was not known to the constable, the conviction was held proper. (1 *Eng. L. & Eq. R.*, 566.)

In *Wharton's American Law of Homicide*, *p.* 49, the rule is thus stated : " A distinction exists between misdemeanor and felony.   In the former it is not lawful to kill the party accused, if he fly from the arrest, though he cannot otherwise be taken, and though there be a warrant to apprehend him ; but under circumstances it may amount to manslaughter if it appear that death was not intended," and 1 *East P. C.*, 302, is cited.

" But where a felony has been committed, the felon may be killed to prevent the escape.   But if he may be taken in any case without such severity, it is at least manslaughter in him who kills him ; and the jury ought to inquire whether it were done of necessity or not." (*Wharton's L. of Am. Hom.*, 50, 51 ; 1 *Hale R.*, 481, 489, 494.)

It will be seen from the authorities that the rule is clear and definite ; that in no case where a simple misdemeanor only has been committed, must an officer take life to prevent escape. The rule is unqualified.   It matters not what may have been the belief of the officer or the grounds of his belief.   If he takes life, he does it at his peril.   If it turns out that the party killed was guilty of misdemeanor only, the officer must answer.

The law is tenderly regardful of the sacredness of human life, and even in cases of felony will not permit it to be sacrificed except in cases of imperious necessity.

III. In the case at bar, the officer made the arrest without a warrant.   The misdemeanor was not committed by the deceased in the view of the officer.

By section thirty of police act (*chap.* 258, *Sess. L. of* 1860), a policeman may arrest without warrant only where the offense is committed within his view.   The officer was, therefore, a trespasser *ab initio.*

*By the Court*, EMOTT, J.   The argument for the prisoner proceeds upon the assumption that the only question for the

jury at the trial was, whether a felony had actually been committed by O'Neil, whose life the prisoner took. This is an error. The rule of the common law undoubtedly is, that if a felony has been committed, an officer will be justified even if he take the life of the offender, in arresting him or preventing his escape, provided there is an absolute necessity for his doing so, while it is not so in the case of an arrest for a misdemeanor. (3 *Inst.*, 224; *Foster Cr. L.*, 271; 1 *Hawk. P. C.*, 6, 1, *ch.* 28, § 11; 4 *Bl. Com.*, 180; 1 *East Cr. L.*, *ch.* 5, § 66, *p.* 298.) The Revised Statutes preserve the same rule. (2 *R. S.*, 660, §§ 2, 3.) When no process has been issued, a homicide can only be justified, even by an officer, by showing the actual commission of a felony, and that there was a positive necessity to take life in order to arrest or detain the felon. When, therefore, a homicide is committed by an officer who is acting without a warrant, it is a material question whether the person killed had committed a felony, but it is equally material to determine whether it was in fact necessary for the officer to take his life in order to effect his arrest or prevent his escape. At the trial the prisoner's counsel requested the court to instruct the jury that if the prisoner believed, upon reasonable grounds, that the deceased had been guilty of a felony, and also upon like reasonable grounds that he would otherwise escape from custody, the killing was justifiable. So I understand the proposition of the counsel at the trial and his argument before us. Such is not the rule of law. There is but one case in which the law justifies the taking of life upon the belief or apprehension of the person accused himself, and that is the case of self-defense. A man may act in his own defense upon what he had reasonable ground to consider was imminent danger or urgent necessity, and he will be justified, although his apprehensions were in reality mistaken. But in taking life to prevent the commission of crime upon another, or to prevent the escape or effect the arrest of a person accused of crime, there must be the actual necessity of such homicide, and not merely reasonable grounds to suppose that it was necessary; and this must be shown to the jury.

Conraddy *v.* The People.

The propositions submitted to the court on the trial seem to me to be open to the objection, in every instance, that they called upon the jury to determine whether the homicide was justifiable, by deciding whether or not the prisoner had reasonable ground to suppose, as things appeared to him, that the deceased would escape if he did not shoot him. This, as I have said, would not have been enough. The prisoner was bound to show the fact, and not merely the appearance to him, of a necessity for what he did. The jury are to judge of the actual necessity for his act, and not of the appearance to him.

If the learned judge at the trial went far enough in his charge to raise the question, which was argued at the bar, as to when an officer would be justified in taking the life of a person whom he had in custody, and who would otherwise escape, yet we are of opinion that no error was committed of which the prisoner can complain. The judge instructed the jury that, assuming that the prisoner had reasonable ground to believe that the deceased had been guilty of felony, and had arrested him therefor, and that the prisoner attempted to escape, and there was reasonable ground to believe that he would otherwise escape, the prisoner was not justified in discharging his pistol at the deceased, if that discharge produced his death. This was equivalent to stating that the prisoner was not justified in taking the life of the deceased to prevent his escape, upon the state of facts which has been given.

The prisoner, although an officer, was acting without a warrant. No warrant had been issued by or to any one against the deceased. Nor had he committed any offense in the view or presence of the officer. Under such circumstances, to justify taking life, even if the jury were satisfied of the necessity of the homicide to prevent an escape, it must be shown that a felony had actually been committed. The distinction is marked between cases of misdemeanor and of felony. It is only in the latter that a homicide is justifiable by any person acting without a warrant, even when it is the only means to prevent the escape of the criminal. When no warrant is out for the offender, even an officer cannot take his life to prevent his

escape upon his own belief of the commission of a felony, however reasonable ground he may have for such a belief. If he act without a warrant, he must be prepared to show the fact of the felony, in order to justify taking the life of a person whom he is endeavoring to arrest or to secure. The counsel for the prisoner excepted to the statement by the presiding judge to the jury that, in his opinion, the evidence fairly warranted the conclusion that the deceased had been guilty of a misdemeanor, and not of a felony. The judge added, that the jury were to judge of the correctness of the conclusion. It was perfectly proper for the judge to state his view of the facts in proceeding to lay down the law to the jury; and the qualification that the jury might judge of the correctness of his statement was probably unnecessary. It has been repeatedly held that no exception can be taken to the expression of an opinion by the court upon a question of fact. I have already said that the learned counsel for the prisoner is in error in supposing that this particular question is the only, or the most material, question of facts in the case.

It might, however, be sufficient to dispose of this exception to say, that we find no evidence upon which the jury could properly have come to the conclusion that O'Neil, the deceased, had been guilty, or could reasonably have been supposed to have been guilty, of anything more than a misdemeanor.

There was no evidence of the commission of a felony; and the judge stated the facts in the only way in which the jury could have been authorized to find them.

There was no error committed upon this trial of which the prisoner can complain; and his conviction must be affirmed.