CASE 15—ACTION BY MARY PETRIE AGAINST S. H. CARTWRIGHT, CITY MARSHAL, FOR THE UNLAWFUL KILLING OF HER HUSBAND. NOVEMBER 12.

# Petrie v. Cartwright.

APPEAL FROM TODD CIRCUIT COURT.

JUDGMENT FOR DEFENDANT AND PLAINTIFF APPEALS. REVERSED.

PEACE OFFICER—RIGHT TO KILL—LIABILITY—ARREST—ATTEMPT TO ESCAPE—EVIDENCE—RES GESTAE.

Held: 1. Criminal Code of Practice, sections 36 and 43, authorizing a peace officer to make an arrest without a warrant where he has reasonable grounds for believing that the person arrested has committed a felony, such officer without a warrant is not justified in shooting a man while fleeing to escape arrest for an offense less than a felony.

2. Where plaintiff and her sister were insulted by two men, and plaintiff having informed her husband of the insult, he followed and accosted the men and struck one of them and a scuffle ensued, whereupon, an officer came up and plaintiff's husband being advised to run, did so, and on refusing to stop at the command of the officer, was shot and killed by such officer; in an action by the wife against the officer to recover damages for the alleged wrongful killing of her husband, evidence as to what took place between the men and plaintiff and her sister was admissible as part of the res gestae.

PETRIE & STANDARD, ATTORNEYS FOR APPELLANT.

Joe Petrie, while protecting his wife and sister from the most outrageous insults, was assaulted with a deadly weapon, and, being frightened, flees to save his life, and is deliberately shot down by a peace officer. It was a deliberate and cruel act, and when arraigned civilly in a suit for damages, he is shielded by an instruction of the court which makes him the sole arbiter of the lives of his fellow beings.

We insist that this case should be reversed for the following reasons:

1. Because the court erred in refusing to permit appellant to prove that just prior to the killing, two men, Blye and Crouch were following her and making indecent proposals to her and' that said conduct was communicated by her to her husband.

2. Because the answer of the appellee is defective in failing to state that he believed and had reasonable grounds to believe that deceased had committed a felony.

3. Our contention is, that in no case where the offense is a misdemeanor, is an officer, without a warrant of arrest, justifiable in killing the offender, who is fleeing to escape, although he may believe in good faith and have reasonable grounds to believe, that such offender has committed a felony.

## AUTHORITIES CITED.

Head v. Martin, 9 R., 45; Dilger v. Com., 11 R., 67; 3 Ency., p. 892 and notes; Conraddy v. People, 5 Park Crim., N. Y., 234.

C. A. DENNY, ATTORNEY FOR APPELLEE.

The testimony shows that Joe Petrie, after being told by his wife that Blye and Crouch had insulted her, immediately turned and followed them and finding Crouch in front of the pool room door looking in, without a word of warning struck him on the head from behind with something that was sufficiently heavy and deadly to knock him across the broad pavement and out into the street under a buggy and render him senseless; that appellee, who was twenty-five yards away heard the licks that Petrie was inflicting upon Crouch and saw him fall apparently dead, and saw the negro run, and he, appellee, with his official uniform on ran into the light and halted Petrie, and Petrie, seeing him, ran around him and started down the street away from town; the first shot was fired on the ground as a warning to Petrie before he passed appellee and the other shot was fired as the last and only means of apprehending him.

Petrie v. Cartwright.

1. We claim that the offense was committed in the presence of the peace officer, and under the law he had the right to make the arrest without a warrant.

2. That he had the right to make the arrest without a warrant if he had reasonable grounds for believing that Petrie had committed a felony.

Out of necessity, the officer, in a case like this, is given the right to determine in his own mind what offense the fleeing party is guilty of, and if he has reasonable grounds for believing him guilty of a felony he has the right to use all the force necessary to apprehend him.

OPINION OF THE COURT BY JUDGE HOBSON—REVERSING.

The appellant, Mary Petrie, was going to her home in Elkton, Ky., after night, in company with her husband's sister, Mary Belle. They were followed by two men, named Blye and Crouch; the latter proposing sexual intercourse, and making an exposure of his person. They hurried on, and met Joe Petrie, the husband of Mary. She told him of the conduct of the men, and he immediately went back up the street in the direction of them. When he overtook them, he asked Crouch what he had insulted his wife for. Crouch said, "Damn your wife, and you, too." Petrie then struck him. A scuffle followed, and Crouch fell. Crouch and Blye were white men. Petrie was a negro. The difficulty came up just in front of a billiard saloon. Blye was cutting at Petrie with his knife. Some one called out to Petrie to run, which he did. Appellee Cartwright, who was the city marshal, was in sight a few yards off, and, seeing Crouch fall, as Petrie ran past called to him to halt, and, when he did not stop, fired his pistol in the ground. He then fired a second time, taking aim at Petrie, and killing him. Petrie's clothes were cut behind. His clothing was cut through and through, and his skin scraped. These cuts were made by Blye while he was scuffling with Crouch. Although the officer called to Petrie twice to stop, he does not appear to have heard him. Neither recognized the

other in the dark. Crouch was very drunk, so that he had
no recollection of what occurred. He was bruised on the
back of the head by the blow or fall, but, except a knot
there, received no other injury. The wife, Mary Petrie,
then filed this action under section 4 of the Kentucky Stat-
utes to recover for the death of her husband. The defend-
ant pleaded, in substance, that he was acting in his official
capacity; that the deceased committed an offense in his
presence by striking Crouch, and immediately turned to
flee; that he tried to stop him, and place him under arrest,
and pursued him for that purpose, but could not overtake
him, and was forced to shoot him to prevent his escaping;
that he used no more force than was necessary, and that
he believed, and had reasonable grounds to believe, that a
felony had been committed; and that he had no other means
of preventing the escape of the felon but to shoot him.
The court instructed the jury that, if the officer believed
in good faith, and had reasonable grounds to believe, that
Petrie had committed a felony, and, after using all other
available means to arrest him, fired the fatal shot solely
in order to procure his arrest, and in doing so used no
more force than appeared to him to be reasonably necessary
in order to make the arrest, they should find for the de-
fendant. The jury found a verdict for the defendant un-
der these instructions, and the plaintiff appeals.

We think it evident from the proof that Petrie's flight
was not to avoid arrest, but only to escape what he con-
ceived to be an impending danger. We think it also clear
that the fall of Blye was due rather to his being very drunk
than to any other cause, for he seems to have fallen in the
scuffle, and not when he was struck. The jury were war-
ranted in concluding from all the evidence that Petrie had
in fact committed no felony. The question, therefore, pre-

Petrie v. Cartwright.

sented is, may a peace officer, to make an arrest upon a suspicion of felony, shoot a person who does not stop when called upon to halt? The statute provides: "A peace officer may make an arrest . . . without a warrant when a public offense is committed in his presence, or when he has reasonable grounds for believing that the person arrested has committed a felony." "A private person may make an arrest when he has reasonable grounds for believing that the person arrested has committed a felony." "No unnecessary force or violence shall be used in making the arrest." Cr. Code Prac., sections 36, 37, 43. In Dilger v. Com., 88 Ky., 560 (11 R., 67), 11 S. W., 651, the court, after referring to these statutory provisions, speaking of the officer's authority, said: "Our statute is silent, save as above cited, as to the force he may use. We must, therefore, turn to the common law for guidance. By it, in a case of felony, he may use such force as is necessary to capture the felon, even to killing him when in flight. Where it is a misdemeanor, however, the rule is otherwise. It is his duty to make the arrest, but, unless the offender is resisting to such an extent as to place the officer in danger of loss of life or great bodily harm, the latter can not kill him. He can only do so, or inflict great bodily harm, when, by reason of the resistance, he is placed in the like danger. If he meet with resistance, he may oppose sufficient force to overcome it, even to the taking of life." In the previous case of Head v. Martin, 85 Ky., 481 (9 R., 45) 3 S. W., 622, the court announced the same rule. There it is also said: "Human life is too sacred to admit of a more severe rule. Officers of the law are properly clothed with its sanctity. They represent its majesty, and must be properly protected. But to permit the life of one charged with a mere misdemeanor to be taken when fleeing from the

officer would, aside from its inhumanity, be productive of
more abuse than good.  The law need not go unenforced.
The officer can summon his posse, and take the offender."
The authorities are clear that where the offense is only
a misdemeanor the officer can not, to prevent his escape,
take the life of the offender when in flight.  Head v. Mar-
tin, 21 Am. & Eng. Ency. Law, 204; Thomas v. Kinkead,
(Ark.), 18 S. W., 854, 15 L. R. A., 558, 29 Am. St. Rep., 68;
note to Hawkins v. Com., 61 Am. Dec., 162.   They are also
uniform that an officer may lawfully arrest one who, as he
believes, and has reasonable grounds to believe, has com-
mitted a felony.  Doering v. State, 19 Am. Rep., 669.   And.
it is laid down that in such case he must proceed very
cautiously where the person sought to be arrested flees,
as flight is different from resistance.   Note to Hawkins v.
Com., 61 Am. Dec., 162.   But these authorities do not de-
termine the question whether an officer acting without
warrant is excusable for killing such a person in flight
when he had reasonable grounds to believe a felony had
been committed, although in fact the offense was only a
misdemeanor.   The common-law rule as to the arrest of a
felon is thus stated in 2 Bish. Cr. Law, section 647:  "And
in cases of felony the killing is justifiable because an actual
arrest is made, if in no other way the escaping felon can be
taken."  See, also 4 Bl. Comm., 292.   In Conraddy v. Peo-
ple, 5 Parker, 234, an officer, who had arrested a person
on suspicion of felony, shot and killed him when he at-
tempted to escape.   The deceased was in fact guilty of only
a misdemeanor, and the officer was held guilty of man-
slaughter.   To the same effect, substantially, is the case
of People v. Kilvington, 104 Cal., 86, 37 Pac., 799, 43 Am.
St. Rep., 73.   There an officer saw two men running, the
hinder man crying out, "Stop, thief!"   He commanded the

Petrie v. Cartwright.

front man to stop. The order was disobeyed. He then shot and killed him. It was held that, as he had reasonable cause to believe a felony had been committed, and shot merely to intimidate the man sought to be arrested, and not with the purpose of hitting him, it was a question for the jury whether he was guilty of criminal negligence.

We have been unable to find any common-law authority justifying an officer in killing a person sought to be arrested; who fled from him, where the officer acted upon suspicion, and no felony had in fact been committed. The common-law rule allowing an officer to kill a felon in order to arrest him rests upon the idea that felons ought not to be at large, and that the life of a felon has been forfeited; for felonies at common law were punishable with death. But where no felony has been committed the reason of the rule does not apply, and it seems to us that the sacredness of human life and the danger of abuse do not permit an extension of the common-law rule to cases of suspected felonies. To do so would be to bring many cases of misdemeanor within the rule, for in a large per cent. of these cases the officer could show that he had reasons to suspect the commission of a felony, and it would be left entirely with him to say whether he was proceeding against the defendant for a misdemeanor or for a felony. The notion that a peace officer may in all cases shoot one who flees from him when about to be arrested is unfounded. Officers have no such power, except in cases of felony, and there as a last resort, after all other means have failed. It is never allowed where the offense is only a misdemeanor, and where there is only a suspicion of felony the officer is not warranted in treating the fugitive as a felon. If he does this, he does so at his peril, and is liable if it turns out that he is mistaken. He may lawfully arrest upon

a suspicion of felony, but he is only warranted in using such force in making the arrest as is allowable in other cases not felonious, unless the offense was in fact a felony. "In all cases, whether civil or criminal, where persons having authority to arrest or imprison, and using the proper means for that purpose, are resisted in so doing, they may repel force with force, and need not give back; and, if the party making resistance is unavoidably killed in the struggle, this homicide is justifiable." 1 Russ. Crimes, 665. In Lindle v. Com. (111 Ky., 866) (23 R., 1307) 64 S. W., 986, this rule was followed where an officer attempted to arrest a person upon reasonable grounds to believe he had committed a felony, and was forcibly resisted by him. But where a supposed offender simply fails to stop when ordered to do so, a different principle applies. Although the rule is otherwise laid down in State v. Evans, 161 Mo., 95, 61 S. W., 590, 84 Am. St. Rep., 669, the question was not before the court in that case; and, as was well said in Thomas v. Kinkead (Ark.) 18 S. W., 854, 15 L. R. A., 558, 29 Am. St. Rep., 70, the rule as thus stated is not sustained by the common-law authorities.

The court should have allowed the evidence as to what took place between Blye and Crouch and the two women; also as to what took place between them and Joe Petrie; as they were only a short distance from home when the transaction occurred, and before they got home they heard the shots. The whole thing was so closely connected that it should all be regarded as one transaction, and the evidence referred to was competent as *res gestae*.

Judgment reversed, and cause remanded for a new trial.