Yah Voorhis, J.
The action is for the negligent shooting of plaintiff’s husband by a New York City policeman. On May 26, 1951 deceased collided with the front end of another auto at the intersection of Osborn Street and Belmont Avenue in Brooklyn. Deceased did not stop but continued on Osborn Street. A crowd had gathered at the scene of the accident, and a number of persons shouted “ Hit and run ”. Defendant Sam Appelbaum and another New York City patrolman were approaching the scene at the time of the accident in a police car. Appelbaum heard the crash, but did not see the collision. Hearing the cries of the crowd, Appelbaum followed the car operated by deceased along Osborn Street.
At a point on Osborn Street approximately three blocks from the place of the collision, deceased’s auto suddenly swerved to the right and stopped. A front tire had blown out. The police car following was unable to stop in time, and struck *337 the rear of deceased’s auto. Deceased jumped out of his car on the left side, and ran forward toward the next street intersection. The two patrolmen got out of their car, the driver, Patrolman Appelbaum, on the left side and the other policeman on the right. Appelbaum then called to decedent to. “ Stop ”, and about three seconds later fired a shot which struck the decedent in the back of his head and killed him. When the policeman fired the shot, deceased was said to have been ‘1 a little ” in front of his car, and the patrolman “ about two feet ” behind it. Expert testimony produced by defendants showed that the bullet initially struck the left rear door of the automobile that deceased was driving, and richocheted off from it, striking him in the head. The testimony of defense witnesses was that Patrolman Appelbaum had pointed his gun to the right and at an upward angle in order to fire a warning shot.
Although plaintiff’s version that the patrolman purposely shot her intestate conflicted with this, the jury verdict in favor of defendants establishes the facts in accordance with the defense version unless a new trial should be granted on account of errors in the charge. The first error is clear but no exception was taken. Justifiable homicide is defined in section 1055 of the Penal Law as homicide brought about necessarily, in overcoming actual resistance to the execution of the mandate of a court or officer, or in the discharge of a legal duty; or, “ Necessarily, in retaking a prisoner who has committed, or been arrested for, or convicted of a felony, and who has escaped or has been rescued, or in arresting a person who has committed a felony and is fleeing from justice; or in attempting by lawful ways and means to apprehend a person for a felony actually committed, or in lawfully suppressing a riot, or in lawfully preserving the peace.” • The Trial Justice instructed the jury concerning the definition of justifiable homicide in the Penal Law and likewise that leaving the scene of an accident is a misdemeanor (Vehicle and Traffic Law § 70, subdivision 5-a), but then left it to the jury to decide on the evidence whether or not this deceased had committed a felony. He told them that if they found that he had committed a felony then homicide by the police officer would be justifiable. This man had not committed a felony, and it should not have been *338 left to the jury to decide whether this was justifiable homicide under section 1055 of the Penal Law. But this point is not available to appellant inasmuch as no exception was taken.
The next basis of liability asserted by plaintiff was negligent shooting by the officer, to which, of course, contributory negligence would be a defense. In the instruction on this subject the jury may well have been confused concerning whether contributory negligence would consist merely in decedent’s flight for the purpose of escaping arrest, or in the operation of the automobile by deceased resulting in the collision with the first ear at Osborn Street and Belmont Avenue after which he left the scene of the accident. Concerning this possibility of confusion, plaintiff’s counsel asked of the court: “Is it your Honor’s position that negligence at the scene, at Belmont and Osborn, would be contributory negligence? ” to which the court replied: “ I believe, counsellor, I said any acts or omissions on the part of the deceased at the time of the shooting and immediately prior thereto; in other words, the whole picture.”
In the light of counsel’s question, this would naturally be construed to have been an affirmative answer that negligence in the prior collision would be contributory negligence with respect to the shooting- by the officer. It indicated that the Trial Justice meant to bring decedent’s driving at the time of the first collision within the orbit of contributory negligence.
When it is recalled that the police officer who fired this shot had not seen the collision but had only heard the crash, it would appear that the question of which driver was at fault for that collision would be remote from the negligence involved in running away from his auto to escape arrest after having had the blowout three blocks away, when the deceased was killed. We think that this was prejudicial error. Hit and run drivers excite emotional antagonism, and if deceased not only left the scene of the accident but was also at fault in the first collision resulting in injury to one of the occupants of that ear, it would have been likely to prejudice plaintiff’s case before the jury. Any negligence resulting in the first accident was unrelated to decedent’s being shot by the policeman. That was a separate incident occurring three blocks away, with a separate set of causes and consequences. The prior accident was particularly irrelevant in view of the circumstance that *339 the patrolman who shot decedent was unaware of how that accident had occurred, and knew nothing about it except the hue and cry that decedent was a hit and run driver. Somewhat greater stress may be placed upon this error because of the other more serious error previously mentioned to which no exception was taken. If a case is close or other circumstances have been liable to prejudice a party’s case or defense, each reviewable error assumes greater significance because it is more likely to have affected the result.
What force can be employed by a police officer in the case of a fugitive perpetrator of a misdemeanor is not altogether clear, but the degree of force that may be employed has been restricted in the decisions of the courts. In Conraddy v. People (5 Parker Cr. Rep. 234) a police officer arrested a man who had committed an assault and battery (misdemeanor) upon his wife. While under arrest, this man escaped and was shot by an officer while being pursued. The trial court declined to instruct the jury that if the police officer believed, upon reasonable grounds, that the deceased had been guilty of .a felony and would escape from custody, the killing was justifiable. On appeal the refusal so to instruct the jury was sustained, the court saying at page 240: 1 £ Such is not the rule of law. There is but one case in which the law justifies the taking of life upon the belief or apprehension of the person accused himself, and that is in the case of self defense. * * * But in taking life to prevent the commission of crime upon another, or to prevent the escape or effect the arrest of a person accused of crime, there must be the actual necessity of such homicide, and not merely reasonable grounds to suppose that it was necessary; and this must be shown to the jury.” And further the court said (p. 241): ££ To justify taking life, even if the jury were satisfied of the necessity of the homicide to prevent an escape, it must be shown that a felony had actually been committed.”
The rule is thus stated in 18 A.L.R. 1369: "(I)n other words, * * * the common law rule allowing an officer to kill a felon in order to arrest him cannot be extended to cases of suspected felonies. That an officer acts at his peril in such a case, see Petrie v. Cartwright (1902), 114 Ky. 103, 59 L.R.A. 720 ”.
In Magar v. Hammond (183 N. Y. 387, 390), where a gamekeeper guarding ft jjgljpond shot a plaintiff taking fish, the *340 court said that1 ‘ Even in the case of a peace officer, he is justified in the use of a deadly weapon against an offender only when its use is necessary to secure the arrest of the offender, and when the offender has been guilty of a felony ” (italics from original).
The Conraddy case (supra) .was cited with approval.
In People v. McCarthy (47 Hun 491, affd. 110 N. Y. 309), a similar conviction of manslaughter was upheld, the General Term saying (p. 493) “ That a person is discovered to be running upon a public street in the night time, does not furnish such evidence that he has been guilty of committing crime, as will justify an officer to fire at him even though such person should fail to obey the command of the officer to stop.”
Very likely time has moved on since some of these cases were decided, and in the hectic conditions of modern metropolitan life greater scope may be allowed to police officers in some respects. Nevertheless human life is still sacred, and the statute is still in effect concerning what a police officer may do in the apprehension of fleeing or suspected criminals.
The judgment appealed from is reversed and a new trial granted, with costs to appellant to abide the event.
Chief Judge Conway and Judges Desmond, Dye, Fttld and Froessel concur; Judge Burke taking no part.
Judgment reversed, etc.