Carl **QUALLS,** Administrator of the Estate of **Billy Don Trull** and **Manual Daniel Bunch,** Plaintiffs-Appellants.

v.

**Jack K. PARRISH et al.,**
Defendants-Appellees.

No. 75–1590.

United States Court of Appeals,
Sixth Circuit.

Submitted June 5, 1975.

Decided April 19, 1976.

lett, Steele, Sanford, Robinson, & Merritt, Nashville, Tenn., for plaintiffs-appellants.

James P. Diamond, James D. Todd, Jackson, Tenn., for defendants-appellees.

Before EDWARDS, McCREE and LIVELY, Circuit Judges.

McCREE, Circuit Judge.

This is an appeal from a judgment in favor of defendant law enforcement officers in a civil rights action. 42 U.S.C. § 1983. The district court, sitting without a jury, determined that the Sheriff of Decatur County, Jack K. Parrish, and two of his deputies, Jeffery L. Long and Jack French, did not violate plaintiffs'[1] civil rights when, after a high-speed automobile chase, one of the deputies shot at plaintiff Bunch's automobile and killed Trull, plaintiff Quall's decedent. The district court, on alternative grounds, determined that defendants lawfully employed deadly force in order to apprehend plaintiffs. In the concluding paragraph of its opinion, the district court said:

> Finally, the Court finds that plaintiff has failed to carry the burden of proof that French acted unreasonably or with excessive force or authority under all the circumstances. There was a reasonable basis for the Sheriff's deputies to believe that a felony had been committed and that plaintiffs might be involved, or that plaintiffs had committed a felony in at least threatening the officers with assault by use of the automobile after the chase began. Bunch and Trull were at least equally to blame for the tragic consequence that ensued.

We affirm the judgment of the district court.

The events giving rise to this appeal took place in Decatur County, a rural area in the Western District of Tennessee, on the evening of March 31, 1972, and the early morning hours of April 1. Bunch and his passen-

W. C. Keaton, Keaton & Turner, Hohenwald, Tenn., William Lamar Newport, Gul-

---

1. The terms "plaintiffs" and "appellants" will be used to refer to plaintiff-appellant Bunch and plaintiff-appellant Qualls' decedent Trull.

ger, Trull, were in Bunch's automobile returning to their homes in Perry County after spending the evening at a party in the neighboring town of Waverly. Bunch was driving his 1971 red Dodge Demon automobile east on Highway 20 in Decatur County. Evidence at trial showed that Trull was quite intoxicated, but Bunch was sober.

At about 11:30 p. m., Sheriff Parrish was informed by departmental radio that Wilbur Dean Ellis had been observed dragging a woman at gunpoint from a local restaurant and forcing her into his automobile. Since Parrish was busy on another assignment, he instructed the police dispatcher to inform Deputy French about the kidnapping. The dispatcher called French and requested him to locate and apprehend Ellis. French, a part-time deputy sheriff, used his own car, a white Chevrolet that bore no police identification, for this assignment. His car was neither equipped with a police siren nor with an emergency flashing light, and he was not wearing a police uniform.

French stopped to pick up another off-duty deputy, Jeffery L. Long, who also was dressed in civilian clothing. Together they proceeded to an all-night restaurant. Both officers knew and would have recognized Ellis and his female captive on sight.

The officers began their investigation at the restaurant, and, a few moments later, observed Bunch's red Dodge Demon automobile proceeding along the highway. Although the dispatcher had not suggested it, Deputy French thought that the kidnapper might be driving a Chrysler or Dodge automobile because Ellis worked at a Chrysler-Dodge dealership. Accordingly, because the vehicle that the officers saw was a Dodge automobile with two occupants, they speculated that it might have been the kidnapper's car.

The district judge found that appellant Bunch's automobile "was being driven in its proper lane of traffic, and neither Bunch nor Qualls [Trull] was guilty of any apparent violation of law when the deputies decided to 'check out' the vehicle and its occupants." Next, the district judge observed:

French drove up behind the Bunch car which bore Perry County license plates and attempted to pull it over; Deputy Long trying to signal them to halt inside the town of Parsons with flashlight, while French turned on his 'emergency' blinker lights and sounded his horn. Neither French nor Long identified the occupants of the Bunch car but Long yelled out to attempt to make themselves known as police officers.

In response to French's attempts to direct Bunch to the side of the road, Bunch rapidly accelerated his car and attempted to elude the deputies. Bunch testified that neither he nor Trull ever realized that their pursuers were police officers. A seven mile chase ensued during which both vehicles reached very high speeds. In fact, the Bunch vehicle went out of control on two curves during the course of the chase.

Bunch testified that several miles past Parsons on Highway 69, his car "spun out" on a curve and came to rest across the highway with the passenger side of his car facing the oncoming officers. French drove his automobile to within six or eight feet of Bunch's car with his headlights shining directly upon Bunch's car. Then Deputy Long got out of the car and walked toward Bunch's vehicle intending to open the passenger door in order to protect the kidnap victim if she were in the car. Before Long could reach the door, Bunch started his automobile again and sped away from the scene. The car "fishtailed" as it departed, knocking Long backward. After firing a warning shot, Long reentered Deputy French's automobile and they resumed the chase.

The high-speed pursuit continued until Bunch turned off the main highway and entered a semi-circular driveway. As Bunch entered the south entrance of the driveway, French drove to the north entrance and blocked it with his car. In the meantime, Bunch, discovering that the north exit was blocked by French's car, turned his automobile around to drive out the south end of the driveway.

The district judge narrated the last moments of this tragic episode:

French ran to the other driveway exit when Bunch turned around and headed out back toward the Highway, this time in a southerly direction as Long reported their pursuit to the dispatcher over the car radio communications system. As Bunch passed within about ten feet of French, the Deputy fired .357 magnum pistol several times at the moving car. At least two of French's shots struck the Bunch car, one of them also striking Trull in the head resulting in almost instantaneous death.

■ In ruling in favor of the defendants, the district judge considered Tennessee case law that authorizes a law enforcement officer in whose presence a felony has been committed to use all means necessary to arrest the offender and to prevent his flight. *Love v. Bass*, 145 Tenn. 524, 529, 238 S.W. 94 (1921), *Lewis v. State*, 40 Tenn. 127 (1859). However, an "officer has no absolute right to kill, either to take, or prevent the escape of, a prisoner. If with diligence and caution the prisoner might otherwise be taken or held, the officer will not be justified for the killing, even though the prisoner may have committed a felony." *Love v. Bass*, 145 Tenn. at 529–30, 238 S.W. at 96, *Reneau v. State*, 70 Tenn. 720 (1879). Finally, the determination "[w]hether or not there was a reasonable necessity for the killing, and the reasonableness of the grounds upon which the officer acted in killing, are questions for the jury." 145 Tenn. at 530, 238 S.W. at 96.

The district judge found
that plaintiff has failed to carry the burden of proof that French acted unreasonably or with excessive force or authority under all the circumstances. There was a reasonable basis for the Sheriff's deputies to believe that a felony had been committed and that plaintiffs might be involved, or that plaintiffs had committed a felony in at least threatening the officers with assault by use of the automobile after the chase began.

Appellants present two issues on appeal: (1) whether the district court erred in determining that the officers had probable cause to attempt to stop appellant's automobile in order to question the occupants about the kidnapping and (2) whether the district court erred in determining that the officers lawfully used deadly force because they had probable cause to believe that a felonious assault had occurred during the chase. We believe that both issues must be resolved against appellants.

■ We find it unnecessary to determine whether the officers had probable cause to stop the Bunch automobile in order to *arrest* its occupants for kidnapping. The deputies' decision to follow the Dodge Demon resulted from a reasonable speculation that the kidnapper, who worked for a Chrysler-Dodge automobile dealer, might be driving a Dodge automobile. In addition, the vehicle was observed in the general vicinity of the abduction, and there were, as expected, two occupants in the vehicle. Appellant's sudden acceleration served to strengthen the suspicion generated by the other factors. These facts, viewed in the light of the officers' experience, could reasonably lead them to conclude that criminal activity might be afoot and that it was necessary to take "swift measures to discover the true facts and neutralize the threat of harm." *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889, 911 (1968), *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). Accordingly, the officers were authorized to pursue and stop the automobile in order to question its occupants.

With respect to the district court's determination that the officers had probable cause to believe that a felonious assault had occurred, we determine that the evidence presented at trial supports the finding. Bunch's rapid departure from the scene of the "spinout," which caused the car to fishtail and knock Deputy Long backwards, could have been viewed as an assault and battery. The district court's findings do not make clear whether it found that a felonious assault occurred then, or at the

end of the chase when Bunch drove towards French at the exit from the semi-circular driveway. At the semi-circular driveway, the district judge found that the Bunch automobile passed "without about ten feet of French," as it travelled toward the highway. Deputy French testified: "If I hadn't got out of the way [of Bunch's automobile], I would have been dead today." We also observe that the district court rejected as not credible Bunch's explanation that he was fleeing his pursuers because he believed that he was being chased by robbers.[2]

Accordingly, the district court determined that French had probable cause to believe that he had been feloniously assaulted by Bunch's car, and that under Tennessee law French could use deadly force to apprehend his assailant.

■ We begin our legal analysis by observing that federal, not state, law applies and determines the adequacy of defenses asserted in a civil rights action under 42 U.S.C. § 1983. *Scheurer v. Rhodes*, 416 U.S. 232, 237–38, 94 S.Ct. 1683, 1686–87, 40 L.Ed.2d 90, 97 (1974); *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *Jones v. Marshall*, 528 F.2d 132 (2d Cir. 1975); *Clark v. Ziedonis*, 513 F.2d 79, 81 (7th Cir. 1975); *Bell v. Wolff*, 496 F.2d 1252 (8th Cir. 1974); *Nelson v. Knox*, 256 F.2d 312, 314 (6th Cir. 1958). Accordingly, although we are not bound by a state law privilege available to a police officer, nevertheless, as the Second Circuit has recently observed in a similar case: "[W]e still are by no means free to elevate whatever view of the privilege we think to be preferable to the constitutional level envisaged by § 1983." *Jones v. Marshall*, 528 F.2d 138. If we were writing on a blank slate, we would adopt the rule that Judge Oakes proposed in that case. It "would limit the privilege [of police use of deadly force] to the situation where the crime involved causes or threatens death or serious bodily harm, or where there is a substantial risk that the person to be arrested will cause death or serious bodily harm if his apprehension is delayed." 528 F.2d at 140 (footnote omitted). *See also Beech v. Melancon*, 465 F.2d 425, 426–27 (6th Cir. 1972) (concurring opinion), *cert. denied*, 409 U.S. 1114, 93 S.Ct. 927, 34 L.Ed.2d 696 (1973).

■ However, we hold that in this case, as in *Jones v. Marshall, supra*, we should consider the law of the state in determining the federal law to be fashioned to determine the liability of the defendants. Our principal reason for agreeing with the district court that the Tennessee rule should be made the federal rule in this case is that a decision to the contrary would be unfair to an officer who relied, in good faith, upon the settled law of his state that relieved him from liability for the particular acts performed in his official capacity. Most of the state courts that have considered this question follow the old common law rule that deadly force may be used by a police officer only when he has reasonable grounds to believe that the person he is attempting to arrest has committed a felony. *See, e. g., People v. Kilvington*, 104 Cal. 86, 37 P. 799 (1894); *Coldeen v. Reid*, 107 Wash. 508, 182 P. 599 (1919); *Union Indemnity Co. v. Webster*, 218 Ala. 468, 118 So. 794 (1928); § 131 of the Restatement II of Torts. *But see, e. g., Fields v. City of New York*, 4 N.Y.2d 334, 175 N.Y.S.2d 27, 151 N.E.2d 188, 191 (1958) (Van Voorhis, J.); *Petrie v. Cartwright*, 114 Ky. 103, 70 S.W. 297 (1902); *Commonwealth v. Duerr*, 158 Pa.Super. 484, 45 A.2d 235 (1945) (cases requiring certainty that person against whom deadly force is used has committed a felony); ALI Model Penal Code § 3.07 (crime involved "use or threatened use of deadly force"); § 131, Restatement I of Torts (allowing deadly force only if felony "normally causes or threatens death or serious harm"); Moreland, The Use of Force in Effecting or Resisting Arrest, 33 Nebraska L.Rev. 408 (1954).

2. Bunch testified that Trull, who was on parole, was drunk and did not want any contact with the police.

Although there is "a discernible trend in this century away from allowing the use of deadly force by a police officer in effecting a felon's arrest," *Jones v. Marshall*, 528 F.2d at 139, we do not view it as a mandate here where a kidnapping had been reported to require a higher standard under § 1983 than is afforded by the state rule to which the district judge referred.

■ Accordingly, we determine that the district judge was correct (1) in considering the Tennessee rule in fashioning the federal law to be applied in this case, and (2) in determining that French had probable cause to believe that he had been feloniously assaulted and was therefore privileged to use deadly force. We observe that we would probably reach the same result even under the rule suggested by the Second Circuit that would limit the privilege of using deadly force to circumstances where the crime causes or threatens death or serious bodily harm.

The judgment of the district court is AFFIRMED.