**Cleamtee GARNER, father and next of kin of Eugene Garner, a deceased minor, Plaintiff-Appellant,**

v.

**MEMPHIS POLICE DEPARTMENT, CITY OF MEMPHIS, TENNESSEE and Jay W. Hubbard and E. R. Hymon in their official capacities, Defendants-Appellees.**

**No. 77–1089.**

United States Court of Appeals, Sixth Circuit.

Argued Feb. 14, 1979.

Decided June 18, 1979.

Jack Greenberg, Charles Stephen Ralston, Steven L. Winter, New York City, Walter L. Bailey, Jr., D'Army Bailey, Memphis, Tenn., Avon N. Williams, Jr., Nashville, Tenn., for plaintiff-appellant.

Henry L. Klein, Memphis, Tenn., for defendants-appellees.

Before EDWARDS, Chief Judge and LIVELY and MERRITT, Circuit Judges.

MERRITT, Circuit Judge.

On the night of October 3, 1974, a fifteen year old, unarmed boy broke a window and entered an unoccupied residence in suburban Memphis to steal money and property. Two police officers, called to the scene by a neighbor, intercepted the youth as he ran from the back of the house to a six foot cyclone fence in the back yard. Using a 38-calibre pistol loaded with hollow point bullets, one of the officers shot and killed the boy from a range of 30 to 40 feet as he climbed the fence to escape. After shining a flashlight on the boy as he crouched by the fence, the officer identified himself as a policeman and yelled "Halt." He could see that the fleeing felon was a youth and was apparently unarmed. As the boy jumped to get over the fence, the officer fired at the upper part of the body, as he was trained to do by his superiors at the Memphis Police Department. He shot because he believed the boy would elude capture in the dark once he was over the fence. The officer was taught that it was proper to kill a fleeing felon rather than run the risk of allowing him to escape.

The District Court dismissed the suit of decedent's father brought against the City under 42 U.S.C. § 1983 (1976) to recover damages for wrongful death caused by claimed constitutional violations of the fourth, eighth and fourteenth amendments. In accordance with then existing law, the District Court held that a city is not a

"person" subject to suit under § 1983; but *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), in which the Supreme Court so ruled, was overruled on this point last term by the case of *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Following a bench trial, the District Court also dismissed the case against the officer and his superiors holding, in accordance with our decisions in *Beech v. Melancon,* 465 F.2d 425 (6th Cir. 1972), *cert. denied,* 409 U.S. 1114, 93 S.Ct. 927, 34 L.Ed.2d 696 (1973); *Qualls v. Parrish,* 534 F.2d 690 (6th Cir. 1976); and *Wiley v. Memphis Police Department,* 548 F.2d 1247 (6th Cir.), *cert. denied,* 434 U.S. 822, 98 S.Ct. 65, 54 L.Ed.2d 78 (1977), that the officers acted in good faith reliance on Tennessee law which allows an officer to kill a fleeing felon rather than run the risk of allowing him to escape apprehension.

■ We conclude that the District Court did not err in finding that the individual defendants acted in good faith reliance on Tenn. Code Ann. § 40–808 which provides that an officer "may use all the necessary means to effect the arrest" of a fleeing felon. As our previous cases, cited above, point out, Tennessee courts have interpreted this statute as a codification of the common law rule allowing officers to kill fleeing felons rather than run the risk of permitting them to escape apprehension. This rule applies to fleeing felons suspected of property crimes not endangering human life, as well as life-endangering crimes, and to felons who pose no threat of bodily harm to others, if not apprehended immediately, as well as felons who may be dangerous to others if left at large. Applying the qualified "good faith" privilege or immunity from liability for constitutional claims, as announced in our previous decisions cited above, we affirm that portion of the District Court's judgment dismissing the case against the individual defendants.

■ We reverse and remand the case against the City, however, for reconsideration by the District Court in light of *Monell v. Department of Social Services, supra. Monell* holds that a city may be held liable in damages under § 1983 for constitutional deprivations that result from a "policy or custom" followed by the city. 436 U.S. at 694 and n. 66, 98 S.Ct. 2018.

Our previous decisions do not establish the constitutionality of Tenn. Code Ann. § 40–808, permitting a city to authorize its officers to use deadly force against a fleeing felon, nor have they established the constitutionality of the city's use of hollow point bullets. Although there is discussion of the constitutionality of the Tennessee statute in the *Beech, Qualls* and *Wiley* cases, *supra,* all three of those cases dealt with actions against individual officers under § 1983, and not liability based on the "policy or custom" of a governmental entity. Those cases held that it "would be unfair" to impose liability on an officer "who relied, in good faith, upon the settled law of his state that he relieved him from liability for the particular acts performed in his official capacity." *Qualls v. Parrish, supra* at 694, quoted in *Wiley v. Memphis Police Department, supra* at 1253. The essential holding of those cases was that an individual officer has a qualified privilege or immunity from liability for constitutional claims based on good faith performance of his duties in accordance with statutory or administrative authority, a holding subsequently approved by the Supreme Court in *Butz v. Economou,* 438 U.S. 478, 496–508, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). Although the qualified immunity developed in those cases insulates the officers and officials from personal liability in this case, as the District Court held, the following questions in the case against the city are still open under *Monell:*

1. Does a municipality have a similar qualified immunity or privilege based on good faith under *Monell?*[1]

---

1. *See* discussion of this question in *Liete v. City of Providence,* 463 F.Supp. 585, 588 (D.R.I. 1978).

2. If not, is a municipality's use of deadly force under Tennessee law to capture allegedly nondangerous felons fleeing from nonviolent crimes constitutionally permissible under the fourth, sixth, eighth and fourteenth amendments?[2]

3. Is the municipality's use of hollow point bullets constitutionally permissible under these provisions of the Constitution?[3]

4. If the municipal conduct in any of these respects violates the Constitution, did the conduct flow from a "policy or custom" for which the City is liable in damages under *Monell*?[4]

We remand the case against the City to the District Court for reconsideration in light of *Monell,* including consideration of these questions.

---

2. *See generally Coker v. Georgia,* 433 U.S. 584, 97 S.Ct. 2523, 53 L.Ed.2d 653 (1977); *Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977); *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972); *Landrum v. Moats,* 576 F.2d 1320 (8th Cir.), *cert. denied,* 439 U.S. 912, 99 S.Ct. 282, 58 L.Ed.2d 258 (1978); *Mattis v. Schnarr,* 547 F.2d 1007 (8th Cir. 1976), *vacated as advisory opinion sub nom. Ashcroft v. Mattis,* 431 U.S. 171, 97 S.Ct. 1739, 52 L.Ed.2d 219 (1977); *Jones v. Marshall,* 528 F.2d 132 (2d Cir.. 1975); Day, *Shooting the Fleeing Felon: State of the Law,* 14 .Crim.L.Bull. 285 (1978); Comment, *Deadly Force to Arrest: Triggering Constitutional Review,* 11 Harv.C.R.—C.L.L.Rev. 361 (1976).

3. *See generally* Paust, *Does Your Police Force Use Illegal Weapons? A Configurative Approach to Decision Integrating International and Domestic Law,* 18 Harv.Int'l L.J. 19 (1977).

4. On the question of "policy or custom," police records are said to show, according to reports we do not find in this record, that during the preceding eight years Memphis police officers killed seventeen fleeing burglary suspects; thirteen were black and five were youths. According to the same reports, Memphis police officers killed twenty-four individuals during this period in connection with crimes of violence or in self-defense; they attempted to use deadly force on 177 occasions, 114 of which were in connection with property crimes. See the original certified appellate record, document 45, in *Wiley v. Memphis Police Dep't,* 548 F.2d 1247 (6th Cir.), *cert. denied,* 434 U.S. 822, 98 S.Ct. 65, 54 L.Ed.2d 78 (1977), as summarized in Comment, *Deadly Force to Arrest: Triggering Constitutional Review,* 11 Harv.C.R.—C.L.L. Rev. 361, 362 n. 4 (1976); Report, Tenn. Adv. Committee to U.S. Civ. Rights Comm'n, *Civic Crisis—Civil Challenge: Police-Community Relations in Memphis* 81 (1978).