## Johnson v. Chesapeake & O. Ry. Co. et al.

(Decided June 4, 1935.)

OPINION OF THE COURT BY JUDGE REES—Affirming.

Gerald Johnson, a young colored man, brought this action against the Chesapeake & Ohio Railway Com-

pany, H. P. Layne, and C. R. Levy, surety on Layne's bond, to recover damages for his alleged unlawful arrest and imprisonment by Layne, an employee of the railway company. The jury returned a verdict for the defendants, and the plaintiff has appealed. He seeks a reversal of the judgment on two grounds: (1) The verdict is flagrantly against the evidence; and (2) the instructions are erroneous.

Appellant claims that he was arrested without probable cause by H. P. Layne and L. Y. Johnson, agents of the Chesapeake & Ohio Railway Company, for the offense of stealing personal property in the possession of a common carrier for transportation or delivery, a felony denounced by section 1201b of the Kentucky Statutes, and that H. P. Layne, acting under color of his office as railroad policeman, wrongfully and maliciously struck and wounded appellant on the head with a blackjack and a pistol, and on the same occasion shot him in the leg.

It is admitted that Layne and his companion, L. Y. Johnson, were employed by the railway company and were duly appointed, qualified, and acting railroad policemen under the provisions of sections 779a-1 to 779a-8, Kentucky Statutes, which authorize the Governor, upon application being made to him by any corporation operating a railroad in this state, to commission as policemen such persons as such corporation may designate. Section 779a-3 defines the powers of such policemen as follows:

"The several policemen so appointed and commissioned shall, in and throughout the counties in which they are authorized to act, severally possess and exercise the power of sheriffs and constables in making arrests, and the service of process in criminal and penal prosecutions, and shall be subject to all the liabilities of such sheriffs or constables while in the discharge of their duties as such policemen and for which their security shall be responsible upon their bond; Provided, however, that the powers herein conferred upon said railroad policemen shall only be exercised by them in the arrest and prosecution of persons committing public offenses upon the trains or about the depots."

The appellant testified in substance that on Febru-

ary 11, 1933, between 2 and 3 o'clock in the afternoon, he left his place of work in Ashland and started to his home. When he reached the intersection of Greenup avenue and Twenty-Fifth street he saw Thomas Bell, another colored man, with a small cart loaded with coal. Bell was attempting to push the cart up Twenty-Fifth street, but was making little progress on account of the slippery condition of the street. Appellant volunteered his services and assisted Bell in pushing the cart. They were joined by Smith Clayton, and the three men pulled or pushed the cart to the intersection of Twenty-Fifth street and Winchester avenue. While they were waiting for traffic to pass, Layne and Johnson drove up in an automobile and stopped. Layne asked him where he had obtained the coal and received no response. Layne repeated his question, and appellant then said he did not know, but he assumed Bell had bought it at the coalyard. Bell was present, but apparently offered no explanation. The subsequent happenings are thus described by appellant:

"He says 'That tale won't do. Where did you get that coal?' I says 'I have told you all I know about it.' He says 'Come and go with me.' I says 'For what? What have I done?' and he says 'Come and go.' I says 'Wait just a minute until I can send word to my wife about what has happened to me.' He says 'You get right in.' I turned around and started to backing. They run up behind me and Mr. Layne was at my left and Mr. Johnson had me by the right arm and they struck at me several times in the face. I kept my head out of their way and I just shook that way (indicating) and got loose and climbed up a little bank along there, commenced talking about something else and then Johnson grabbed me in front and Mr. Layne was on the hill behind me and he hit me over the head with a blackjack, turned me around, and Mr. Johnson seized me by the arm again. I was talking to Mr. Layne and he knocked me in the head with the barrel of the pistol some several blows from behind—just directly behind me. He was talking to Mr. Johnson again and he run up and says 'You are going with us. I will kill you if you don't go' and I just turned around and I said 'You can kill me but I am going to send word to my wife what has

happened.' He said 'You ain't going to send nothing. I will kill you.' I said 'All right, I am going to send word to my wife if you do kill me' and he turned and shot me. After he shot me I pulled my pants leg up just this way and showed him where he had shot me through the right leg here and came out here in the knee. He says 'Does it hurt?' I says 'Yes, it is beginning to hurt' and he says 'You are going with us' and I says 'Somebody will have to help me and carry me to the hospital' and he says 'You are going to the City Police Station' and they took me to the Police Station and locked me up and then from there I telephoned to my wife and Nathan Asher and my wife came and they got medical attention for me and they got me out after I executed bond.''

The testimony of appellant is corroborated by that of a number of witnesses who were standing at the intersection of Winchester avenue and Twenty-Fifth street when Layne and Johnson drove up.

H. P. Layne testified that considerable complaint had been made about the theft of coal from the Chesapeake & Ohio freight trains in the vicinity of the Twenty-Fifth street crossing, and he had been instructed to make an investigation and to ascertain, if possible, who were committing the thefts and to break up the practice. On February 11, 1933, as he was driving west on Winchester avenue, he saw three colored men coming out of Twenty-Fifth street with a cart of coal. Gerald Johnson was pulling the cart, and Smith Clayton and Thomas Bell were pushing it. He asked appellant where he got the coal and, quoting the witness:

''He said he got it over to John's place and I says 'Gerald, you know there is no such place as John's place over there and for having that coal I will put you under arrest and take you to the Police Station until we investigate this.' He says 'No sir, you won't take me to the Police Station.' I took ahold of Johnson and he had a leather jacket on that fit tight. I took ahold of Gerald and he said he wasn't going and I says 'Now Gerald, you know what you are up against, don't you?' and he says 'Yes, I can explain.' I says 'You can't explain it to me yourself. You will have to go on down there' and he

kept pulling and jerking but I got him over near the car before Mr. Johnson got out and when Mr. Johnson got out it just seemed like he went mad, went wild, and of course we rassled around and we were on the west side of the street awhile and near the street car line and then east and back down 25th street. He was fighting and rassling and I was jerking at him and he was trying to get his hand inside of his leather jacket. I warned him two or three times and Mr. Johnson did too and Mr. Johnson grabbed his hand one time and he twisted Johnson's hand and jerked him down. He struck at me several times—hit me once in the face. I pulled out a blackjack and hit him with the blackjack when I seen there was nothing else to do, couldn't subdue him, me and Johnson both. We rassled on. He paid no attention to the blackjack. I pulled the gun out and thought if I could make him believe that I would shoot him that he would submit to arrest. It seemed like he was determined not to go and he kept on fighting. Well, the shooting, I didn't have any idea of hitting him, didn't think he was hit. I pulled the gun to make him believe I would arrest him or shoot him and Gerald hit the gun and at the time the gun went down it went off.''

The witness further testified that the coal on the cart was block coal of the character that was carried through Ashland on freight trains, but was not the kind of coal that was used in Ashland for domestic purposes or handled by coal dealers in Ashland.

L. Y. Johnson testified that, when appellant resisted arrest, he went to Layne's assistance and was knocked down by appellant. Both witnesses testified that appellant was drunk.

Thomas Bell was introduced as a witness for the defendants, and he testified that he and appellant stole the coal in queston in the railroad yards and that appellant assisted him in loading the coal on the cart. When the altercation started between Layne and appellant at the intersection of Twenty-Fifth street and Winchester avenue, Bell ran away and was not present when the pistol was fired, though he heard the shot. Three other witnesses who were at or near the street inter-

section saw appellant strike L. Y. Johnson and knock him down.

The front brakeman on a freight train which stopped at the Twenty-Fifth street crossing in Ashland between 2 and 3 o'clock in the afternoon of the day in question saw appellant climb onto a coal car just before the train left. The rear brakeman on the same train saw a pile of block coal near the main line track which several colored men were carrying away. There was snow on the ground, and, after appellant's arrest, L. Y. Johnson traced the tracks of the cart along Twenty-Fifth street and into the railroad yards to a point where he found indications that coal had been thrown from a passing train.

There was ample evidence from which the jury might conclude that appellee Layne had reasonable grounds for suspecting appellant of having committed the felony for which he was arrested. Under section 36 of the Criminal Code of Practice, a peace officer may make an arrest without a warrant when he has reasonable grounds for believing that the arrested person has committed a felony, Grau v. Forge, 183 Ky. 521, 209 S. W. 369, 3 A. L. R. 642, and, where the evidence is conflicting, the question as to whether grounds existed for the arrest without a warrant is one of fact for the jury, Commonwealth v. Bollinger, 198 Ky. 646, 249 S. W. 786.

It is insisted, however, that Layne used more force than was reasonably necessary to effect the arrest, even if it be conceded that he had reasonable grounds for believing that a felony had been committed. There was likewise a sharp conflict in the evidence on this point, and the question, therefore, was one for the determination of the jury.

If the testimony of the appellant and his witnesses is true, Layne unlawfully arrested appellant and was guilty of an unprovoked assault. On the other hand, if the facts were as detailed by the witnesses for the appellees, Layne had the right to make the arrest, and he and Johnson used no more force than was reasonably necessary under the circumstances. The witnesses for the appellant outnumbered those for the appellees, but it was for the jury to say which set of witnesses it would believe. The jury are free to believe the minority

of the witnesses, and a verdict based upon the testimony of such minority will not be disturbed because opposed to the testimony of the majority. Asher v. Golden, 244 Ky. 56, 50 S. W. (2d) 3; Jewell v. Janes, 238 Ky. 63, 36 S. W. (2d) 875.

It is argued that Layne was without authority to make the arrest, even though appellant was guilty of the offense charged, since section 779a-3 of the Statutes restricts railway policemen in the exercise of their powers to make arrests to railway trains and depots, and Louisville & N. Railroad Company v. Offutt, 204 Ky. 51, 263 S. W. 665, is cited. A statement found in the opinion in the Offutt Case, when lifted from its setting, lends color to the contention, but the question was not presented in that case. The arrest complained of was made in the railroad depot for an offense committed there. The narrow construction which appellant seeks to give the act would, in many instances, defeat its purpose. Offenses for which railway policemen are authorized to make arrests are confined to those committed "upon the trains or about the depots," but manifestly it was not the purpose of the Legislature to put a limitation on the place or locality where the arrest could be made. The act specifically provides that railway policemen shall possess and exercise the powers of sheriffs and constables in making arrests "in and throughout the counties in which they are authorized to act."

Complaint is also made because the appellant was not forthwith carried before the most convenient magistrate of the county pursuant to the requirements of section 46 of the Criminal Code of Practice. The undisputed facts are that appellant was seriously injured and in immediate need of medical attention. He was taken to the jail, and Layne and L. Y. Johnson at once summoned a physician. He was released within approximately an hour and taken to the hospital. Under the circumstances, there was no violation of section 46 of the Criminal Code.

The chief complaint of the instructions centers around instruction No. 2, which reads:

"The court instructs you that it is admitted that the defendant, Layne, was a peace officer; and further, that if you shall believe from the evidence

that the plaintiff had appropriated to his own use, or to the use of another, coal which had been in the possession of the defendant, Chesapeake & Ohio Railway Company, for transportation or delivery, and that the said Layne had reasonable grounds to believe that the plaintiff had so done, then the said Layne had the right to arrest the plaintiff without a warrant; and if you shall further believe that the said Layne undertook to place the plaintiff under arrest for said offense and that the plaintiff resisted or undertook to avoid arrest, then the said Layne had the right to use such force as was necessary, or appeared to him in the exercise of a reasonable discretion to be necessary, in order to effect said arrest, even to the taking of the life of the plaintiff. And, if you shall further believe that the said Layne, in order to arrest plaintiff, used no more force than was necessary, or appeared to him in the exercise of a reasonable discretion to be necessary, then the law is for the defendant and the jury will so find.''

It is urged that this instruction is erroneous in that it fails properly to define the force an officer may use to effect the arrest of one charged with a felony.

Petrie v. Cartwright, 114 Ky. 103, 70 S. W. 297, 24 Ky. Law Rep. 903, 59 L. R. A. 720, 102 Am. St. Rep. 274, and Dilger v. Commonwealth, 88 Ky. 550, 11 S. W. 651, 11 Ky. Law Rep. 67, are cited in support of the contention that an officer, in attempting to make an arrest for a felony, may kill the felon only when the latter is in flight or has put the life of the officer in danger. Where a felony has been committed, the rights of the arresting officer are not so restricted and the cited cases did not so hold. The statements in the opinions relative to the right of an officer to shoot in his necessary self-defense where the offender has placed him in danger of loss of life or great bodily harm were made in reference to arrests for misdemeanors. Where a felony has been committed, the arresting officer may use such force as is necessary to prevent the felon's escape, even to killing him. The rule is thus stated in Young v. Amis, 220 Ky. 484, 295 S. W. 431, 432:

"In arresting a person who has committed a felony, an officer has the right to use such force as is neces-

sary, or appears to him to be necessary for the purpose, even to the taking of the felon's life, but an officer is not justified in killing one in order to effect his arrest or prevent his escape on mere suspicion that he has committed a felony, and in such a case he acts at his peril, and can justify only on the ground that a felony has been committed.''

In the instant case, the jury, by the instructions given, were required to believe, not only that appellant had committed the felony and resisted arrest, but that the officer, in order to effect the arrest, used no more force than was necessary or appeared to him, in the exercise of a reasonable discretion, to be necessary. The instructions as a whole fairly presented the law of the case.

The judgment is affirmed.