[No. 42058. En Banc. November 2, 1972.]

OTIS REESE, as *Administrator, Appellant,* v. THE CITY OF SEATTLE *et al., Respondents.*

*Lembhard G. Howell, Lawrence L. Shafer, Jack Tanner,* and *David Roderick,* for appellant.

*Jack P. Scholfield* and *Thomas D. Frey,* for respondents.

HUNTER, J.—This is a wrongful death action brought by Otis Reese, plaintiff (appellant), the administrator of the estate of Robert L. Reese, deceased, against Harold J. Lar-

sen, a Seattle police officer, the City of Seattle and the Seattle Police Department, defendants (respondents). At the conclusion of a jury trial a verdict was returned in favor of the defendants, and judgment was entered accordingly.

The record discloses the following. At 8 p.m. on the evening of June 19, 1965, two Seattle police officers, Harold J. Larsen and Frank Junell, completed their work shift and prepared for a social evening with their wives. Both changed into civilian clothes before leaving. Under Seattle police department regulations officers are to be armed at all times, including off-duty periods. Pursuant to these regulations both officers retained their firearms, wearing them in holsters concealed under their clothing.

It was the testimony of Larsen and Junell that while waiting for their wives they consumed one alcoholic drink at a downtown establishment. After their wives joined them, they frequented two or three other such establishments until midnight when, under the laws at that time, alcohol could no longer be sold. Until that time the testimony is that both officers had five or six drinks.

After midnight the two couples returned to an establishment they had visited earlier where they talked to the owner about a forthcoming fishing trip. They remained there for approximately 1½ hours. Upon leaving the couples decided to go to a restaurant where they could obtain a Chinese food dinner. After some driving around they finally arrived at the Linyen Cafe at about 1:30 a.m.

At this point the testimony becomes confused and contradictory. It was the testimony of the officers and their wives that they entered the cafe and sat at a booth toward the rear. They testified that they were not overly boisterous; that they made no reference to race except for a comment concerning an adjacent Oriental couple eating with chopsticks; that they ordered their food and were halfway through the meal when trouble started. According to their testimony, a small group of blacks approached their table and suddenly began beating the two officers. Due to

their sitting position neither officer was able to defend himself effectively. Plates and food were tossed around and, at the end, both officers were rendered unconscious.

After the beating the Negroes turned and started to walk toward the entrance. At this time Larsen and Junell slowly became conscious of what was happening and tried to follow the Negroes out of the cafe. Larsen testified that, as for himself, he was groggy and not even aware that he was an officer immediately after the fight, and that it took a few moments for him to realize what was happening. In this condition he saw two Negroes running from the cafe and began to give chase. At this moment two uniformed officers arrived, one of whom Larsen recognized. Larsen yelled at the officer that there had been an assault and that the running Negroes were the assailants. Thus Larsen and the uniformed officer gave chase, followed closely by Junell. During the chase, Larsen testified, and both officers and Junell agreed, that he identified himself as a police officer and ordered the Negroes to halt. This order was ignored and instead, the Negroes turned into a parking lot where they entered a car and began to drive away. In exiting the parking lot Larsen testified that the car speeded up, fishtailed and sideswiped a parked car. Larsen testified that he again ordered the car to stop and, upon its failure to do so, he drew his revolver and fired five shots in rapid succession. Although Larsen testified that he was aiming to disable the car, four of the shots entered the car and one of those struck Robert Reese in the head and killed him.

A different version is testified to by the Negroes involved. It was the testimony of Osborne Moore, a Negro, that he and a companion were eating in the Linyen Cafe when the two couples came in. Moore testified that the couples were loud and boisterous, and made several derogatory remarks about the presence of Negroes. A Miss Doris Blood, another Negro sitting with a separate group in the cafe, also testified as to the derogatory statements made by the couples concerning "niggers." Moore called the home of Robert Reese where he talked to James Williams and told

him that there was trouble at the cafe with some whites making smart remarks. Shortly thereafter about five Negroes, including Williams and Reese, arrived at the cafe. Members of this group testified that as they entered one of the white couples remarked, "Here comes some more niggers." The entering group went to the back of the cafe where the couples were sitting and a fight ensued.

After the fight the Negroes turned and walked out of the cafe. Members of this group testified that Larsen and Junell followed them out of the cafe where they had a brief discussion and that the two officers even offered to shake hands. At this time, Moore and Reese decided to leave and began to walk to Moore's car which was parked in a lot a block or so away. They arrived at the car, entered and began driving away when one of the white men in the fight, who was running down the street after them, pulled a gun and began firing. Moore testified that he accelerated, striking a parked car, and eventually escaped. It was at this time that Moore discovered Reese had been struck with a bullet and was dead.

All of the Negroes involved who testified stated that at no time did Larsen or Junell identify themselves as police officers, either before or after the fight or during the chase.

From all the testimony it remains unclear the extent Reese personally participated in the fight. The other Negroes stated that they did not recall Reese throwing punches or being otherwise involved. Both officers and Mrs. Larsen also did not note Reese's participation. Only Mrs. Junell testified she saw Reese and that he in fact threw the first punch. However, there is testimony from the other assailants to the contrary.

Mr. Chin, a part owner of the cafe, and Mr. Liau, a waiter, both testified that the two couples were not unduly loud and that they heard no remarks concerning race, but that they too did not see the fight start and left immediately to summon help. A Mr. Nogamatsu and his wife, who were sitting in a nearby booth, both testified that they heard no racial remarks at all. They testified that during

their meal a group of Negroes approached a nearby booth and when the fight began they left the booth for another part of the cafe, thus they too did not witness the fight.

The Nogamatsus further testified that after the fight Larsen and Junell followed the Negroes outside the cafe where, for a very short period of time, there was some sort of discussion although what was said was not testified to. Junell testified that he had some recollection of discussing the fight with someone just outside the cafe; however, he further testified that he was still staggered and confused and thus was not sure of what was happening at the time. Mrs. Larsen also testified that her husband conversed with the assailants after the fight, but again was not sure of what was said. Larsen testified that at no time did he apologize or offer to shake hands with the assailants.

There was also testimony as to whether Larsen was under the influence of alcohol at the time. After the above events Larsen went to the Swedish Hospital where he was treated for his injuries. The attending physician, Dr. Davis, stated that it was his opinion Larsen was under the influence of alcohol at that time. He based this upon smelling alcohol on Larsen's breath and on his observation of Larsen's reactions to the treatment—that he was groggy, sleepy and unresponsive. On the other hand, the uniformed officers who arrived at the scene testified that Larsen was sober and in full control of his faculties.

The injuries sustained by Larsen were varied, the major one being approximately a 3-inch laceration on the back of his head requiring five stitches. Other injuries included numerous cuts and bruises, two fractured ribs, and perhaps a broken tooth. These injuries were characterized by independent medical testimony as being a relatively minor type of injury, although producing moderately severe pain.

The plaintiff, administrator Otis Reese, appeals from the judgment in favor of the defendants entered upon the jury verdict.

■ It is the plaintiff's primary contention in this case

that the trial court erred in submitting to the jury instruction No. 8:

> If defendant Larsen, based on the circumstances as they appeared to him, honestly formed the opinion that in this assault either grievous bodily harm had been inflicted or that some object had been used likely to cause bodily harm and such circumstances were such that a reasonable mind could have formed such an opinion, then he had a right to act on such opinion.
> This instruction should be considered in determining whether the homicide was justifiable under the definition given.

The defendant cites the following statute, RCW 9.48.160:

> Homicide is justifiable when committed by a public officer, . . . in the following cases:
>
> . . .
> (3) When necessary . . . in arresting a person who has committed a felony and is fleeing from justice; or in attempting, by lawful ways or means, to apprehend a person for a felony actually committed; . . .

The plaintiff argues, under this statute, that deadly force can only be used in attempting an arrest for a felony where reasonably necessary when a felony in fact has been committed, and urges this court to follow the line of cases supporting this rule in other jurisdictions.[1] Our court follows the line of cases holding to the contrary.[2] The rule is clear in the decisional law of this state that deadly force

---

[1]*See Davis v. Hellwig,* 21 N.J. 412, 122 A.2d 497, 60 A.L.R.2d 866 (1956); *Commonwealth v. Duerr,* 158 Pa. Super. 484, 45 A.2d 235 (1946); *Union Indem. Co. v. Webster,* 218 Ala. 468, 118 So. 794 (1928); *Young v. Amis,* 220 Ky. 484, 295 S.W. 431 (1927); *Holloway v. Moser,* 193 N.C. 185, 136 S.E. 375, 50 A.L.R. 262 (1927); *Wiley v. State,* 19 Ariz. 346, 170 P. 869 (1918); *Petrie v. Cartwright,* 114 Ky. 103, 70 S.W. 297 (1902).

[2]*See Miami v. Nelson,* 186 So. 2d 535 (Fla. App. 1966); *Martyn v. Donlin,* 151 Conn. 402, 198 A.2d 700 (1964); *Alaniz v. Funk,* 69 N.M. 164, 364 P.2d 1033 (1961); *State v. Reppert,* 132 W. Va. 675, 52 S.E.2d 820 (1949); *State v. Nolan,* 354 Mo. 980, 192 S.W.2d 1016 (1946); *Johnson v. Chesapeake & O. Ry.,* 259 Ky. 789, 83 S.W.2d 521 (1935); *Thompson v. Norfolk & W. Ry.,* 116 W. Va. 705, 182 S.E. 880 (1935); *State v. Autheman,* 47 Idaho 328, 274 P. 805, 62 A.L.R. 195 (1929); *Murphy v. Murray,* 74 Cal. App. 726, 241 P. 938 (1925).

may be used if necessary to effect an arrest in case of a felony where an officer has reasonable grounds to believe, and does believe, that a felony has been committed. In the early case of *Coldeen v. Reid,* 107 Wash. 508, 182 P. 599 (1919), the same issue was involved as in the instant case. When attempting to apprehend the occupants of a car, the officer, after standing on the running board exhibiting his badge and directing the occupants to stop, fired his revolver several times at the rear tires of the vehicle. After the last shot, the car veered into a bank and the occupant next to the driver was fatally wounded. The action was for wrongful death against the officer and the surety on his bond.

The trial court charged the jury on the theory that a misdemeanor had been committed by the occupants of the vehicle, and refused to instruct on the theory that the offense committed was a felony.

We stated in *Coldeen v. Reid, supra* at 516:

In rejecting the proferred testimony and in refusing to charge as requested, we think the court was in error. In this state, where the common law rule prevails, a police officer is justified in making an arrest when he has reasonable ground to believe, and does believe, that a crime is being committed, and, having the right to make the arrest, he has the right to use that degree of force the circumstances of the case warrant; that is to say, if the crime is a misdemeanor, he may use the force the law permits in making arrests for misdemeanors; and if it be a felony, he may use the force the law permits in making arrests for felony. When, therefore, an officer is called upon to answer for a claimed unlawful arrest, or for excessive use of force in making a lawful arrest, he has the right to show the circumstances surrounding the transaction, and the impression these circumstances make on his mind, and to have the jury charged on his theory of the case; unless, of course, the circumstances were such that there could be no two opinions concerning it. Here there was sufficient facts to make it a question for the jury whether or not the officer had reasonable ground to believe the deceased and his companion were in the act of committing a felony, and, in consequence, was entitled to show what impression these facts

made upon his mind. It was error, therefore, to exclude the proferred testimony.

The plaintiff argues that RCW 9.48.160, *supra,* was not considered by the court in the *Coldeen* case. We disagree. We must assume that the court was aware of the statute (RCW 9.48.160). Also, the court must have been aware of another statute which may be considered in pari materia with RCW 9.48.160, which clearly is not inconsistent with our rule announced in *Coldeen*:

> If after notice of the intention to arrest the defendant, he either flee or forcibly resist, the officer may use all necessary means to effect the arrest.

RCW 10.31.050.

The plaintiff further argues that the *Coldeen* case confuses the law of arrest with the law of shooting a fleeing person. We think not. For an officer to make a lawful arrest for a felony without a warrant, he must have reasonable grounds to believe, and does believe, that a felony has been committed, and it is only when a lawful arrest can be made that the force necessary to effect that arrest can come into play. This was clearly considered by the court in *Coldeen*.

In *Jahns v. Clark,* 138 Wash. 288, 244 P. 729 (1926), we again recognized the rule of *Coldeen*. We there said at page 292:

> The three instructions given by the court properly stated the issue in the case, and that was, whether the officers had reasonable ground to believe, and actually did believe, that the automobile at which the shot was fired contained violators of the law guilty of felony, that felony being, according to the evidence and pleadings in the case, the crime of bootlegging. *White v. Jansen,* 81 Wash. 435, 142 Pac. 1140; *Eberhart v. Murphy,* 110 Wash. 158, 188 Pac. 17; *Young v. Long,* 124 Wash. 460, 214 Pac. 821; *Coles v. McNamara,* 131 Wash. 377, 230 Pac. 430. These instructions fully and fairly stated the issue and the law applicable thereto, and placed the burden upon the appellant Thomas to show by the evidence that he was justified in firing the shot at the automobile.

In *Estes v. Brewster Cigar Co.,* 156 Wash. 465, 287 P. 36

(1930), the rule of *Coldeen* was again followed. There an officer pursued the plaintiff with the mistaken belief that the plaintiff had committed a felony and, in so doing, used deadly force, shot and wounded the plaintiff. We there stated at page 471:

> Whether the acts of Daymude were such as to cause a reasonably prudent police officer to believe and act on the belief that the appellant had committed a felony, we think, is a question for the trier of the fact. Anyone of ordinary prudence, who observes the manager of a place of business where merchandise is kept for sale follow a person from the place of business and point towards him and at the same time hears him utter cries of "thief— robber," would obviously and naturally conclude that the person had committed a theft in the store and was escaping with the things stolen.
>
> To a public police officer, the conclusion would be more obvious and natural than it would to the ordinary layman. It is the duty of the officer to keep the peace, to prevent thefts of property and to pursue and arrest anyone who he has reasonable cause to believe has committed a theft and is carrying away the fruits of the theft; and he, because of his training and experience, would be more observant and quicker to sense the situation than would be the ordinary person. Indeed, as the matter appeared to the officer in this instance, it can be questioned whether he would not have been derelict in his duty had he not attempted to arrest the appellant.

The rule first stated in *Coldeen,* and re-enunciated in *Jahns* and *Estes,* has been the decisional law of the state for the past 53 years. The legislature is presumed to know the pronouncements of this court. If there has been any inconsistency with the *Coldeen* rule and the statutory law of this state, the legislature has had this length of time to modify the effect of the rule by appropriate legislation.

In summation on the issue of the use of deadly force in the making of an arrest by an officer for a felony, we emphasize that great caution must be exercised by an officer in the use of deadly force and it must be resorted to by an officer only when all other reasonable efforts to apprehend a person fleeing from a *lawful arrest* for a felony

have failed. On the other hand, an officer must not be hamstrung by an impending fear of penalty and liability in protecting society from those who would feloniously disregard the rights of others, should he make a mistake in judgment by the use of deadly force necessary to effect an arrest predicated on reasonable grounds and a belief that a felony had been committed.

We believe that the court did not err in submitting instruction No. 8 to the jury in this case.

The plaintiff contends the court erred in giving instruction No. 7, where, in the last paragraph, it states:

A police officer is justified in so shooting for such purpose in arresting for a felony only where it reasonably appears that otherwise the persons guilty of the felony will escape.

The asserted error is that the phrase "reasonably appears" does not connote the limitation of the use of force to circumstances where *it is reasonably necessary* to prevent the escape. We disagree. To add this language to the instruction would be duplicitous. If it reasonably appears the person sought to be apprehended would escape without the use of deadly force by the arresting officer, it follows the use of such force would be reasonably necessary to prevent the escape.

The plaintiff contends the trial court erred by permitting the admission of plates in evidence for the purpose of showing their use as an instrument or weapon likely to produce bodily harm, in that there was no evidence to justify their admission. The plaintiff is mistaken. There was direct testimony by Mrs. Larsen that she saw her husband hit on the head by a plate. The plates were identified as the same as those broken and were therefore relevant for the jury's consideration and to give them the weight they saw fit, if any, as to the use of plates in the assault.

The plaintiff contends it was error for the trial court to refuse the plaintiff's introduction of testimony to show that Officer Larsen, following the shooting, was suspended from the police force for 30 days. There is nothing in the record

to show the cause of this suspension or its materiality as related to the issue in this case. The testimony was properly excluded.

■ The plaintiff contends the court erred in giving instruction Nos. 2 and 4, relating to excusable homicide. The plaintiff argues this would be proper only where the homicide was by accident or misfortune. The plaintiff is correct in that the firing of the gun was not by accident, but the evidence is clear from the testimony of Officer Larsen, which the jury was entitled to believe, that he aimed at the tires intending to disable the vehicle in which the two occupants were fleeing, and that the shooting of Reese was not intended. The elements of accident or misfortune were therefore a part of the evidence in the case and the instructions on excusable homicide were properly given.

The plaintiff further argues, however, that for the homicide to be excusable it must be by lawful means. We have answered this contention in holding that the officer was entitled to use deadly force to effect the arrest of a person who he had reasonable grounds to believe, and did believe, had committed a felony. This, of course, was a factual question for the jury's determination under the instructions given.

■ The plaintiff contends the trial court erred in failing to grant his motion for mistrial when it was brought to the trial court's attention that one of the jurors had lunch with a friend and fellow employee of the defendants. The record shows that after the incident plaintiff's counsel was permitted to interrogate the juror. Questions were also asked by the court. There was nothing disclosed from the questions indicating anything relating to the case was discussed. The juror affirmatively stated there was not. We do not approve of such conduct by a juror. Such an association as a juror having lunch with an acquaintance and friend of the defendant should have been avoided; however, we find no affirmative showing of improper influence upon the juror in prejudicing her ability to fairly decide the case upon the evidence presented according to the instructions

of the court. Under these circumstances, the motion for mistrial was properly denied.

The plaintiff contends by various assignments of error that the trial court erred in failing to give an instruction specifically defining third-degree assault. The following instruction Nos. 5 and 6 were given:

### No. 5

Words, no matter how insulting, do not excuse or justify an assault.

Under undisputed evidence the crime of an assault on the two officers occurred. The question of whether or not this crime amounted to a felony is for your decision.

If it amounted to assault in the second degree, it was a felony; if it did not it was a misdemeanor.

The laws of the State of Washington provide:

Every person who shall willfully inflict grievous bodily harm upon another with or without a weapon; or shall willfully assault another with a weapon or other instrument or thing likely to produce bodily harm shall be guilty of assault in the second degree.

### No. 6

Grievous bodily harm means a serious injury. It need not necessarily be of a permanent nature.

Willfully means not accidentally.

Assault with a weapon or other instrument or thing likely to produce bodily harm is assault in the second degree if any such object was used, even though no serious bodily harm resulted.

The giving of an instruction defining third-degree assault would have been desirable; however, we do not believe there was any confusion in the minds of the jury as to whether the defendants committed a second-degree assault, which was a felony, or a lesser assault which would be a misdemeanor. It is implicit from the instructions given that in the absence of a finding that the assault was in the second degree and a felony, the assault would constitute a misdemeanor and the use of a deadly weapon in making an arrest would not be justified. By the following instruction No. 7, there could be no question but what this was clearly understood by the jury:

Officers may arrest without a warrant for either a misdemeanor or a felony if committed in their presence.

In the case of a misdemeanor it is unlawful for an officer to shoot at a person for the purpose of preventing his escape by wounding or killing him.

A police officer is justified in so shooting for such purpose in arresting for a felony only where it reasonably appears that otherwise the persons guilty of the felony will escape.

■ The plaintiff contends the evidence is this case was insufficient to support an instruction on grievous bodily harm. We disagree. The definition of grievous bodily harm in the court's instruction Nos. 5 and 6, *supra,* is in conformity with our definition in *State v. Linton,* 36 Wn.2d 67, 95, 216 P.2d 761 (1950):

"The words 'grievous bodily harm' include any hurt or injury calculated to interfere with the health or comfort of the person injured; it need not necessarily be an injury of a permanent character. By 'grievous' is meant atrocious, aggravating, harmful, painful, hard to bear, serious in nature."

The jury could have found from the evidence most favorable to the plaintiff, that the attack upon the officers was so severe they were left momentarily unconscious, and that Officer Larsen sustained a 3-inch laceration of his posterior scalp. That the laceration was probably caused by an object other than a fist is corroborated by the testimony of Mrs. Larsen who stated she observed the striking of Officer Larsen by a plate, and by the evidence of the pieces of broken plates in the area where the assault occurred. This is also evidenced by the testimony of Dr. Penny that the laceration was not likely to have been caused by a fist. That in addition, the jury could have found Officer Larsen sustained multiple bruises about the face; that both eyes, his upper lip and nose were swollen; that a tooth was knocked out, and that he sustained fractures of his left seventh and eighth ribs. This clearly was sufficient evidence which, if believed by the jury, would come within the ambit of grievous bodily harm, and justify the trial court giving instruction Nos. 5 and 6, *supra.*

The plaintiff contends the trial court erred in giving the following instruction No. 9, defining a principal in the commission of a crime:

You are instructed that the law defines a principal in the commission of a crime as follows:

Every person concerned in the commission of a felony, gross misdemeanor or misdemeanor, whether he directly commits the act constituting the offense, or aids or abets in its commission, and whether present or absent; and every person who directly or indirectly counsels, encourages, hires, commands, induces or otherwise procures another to commit a felony, gross misdemeanor or misdemeanor, is a principal, and shall be proceeded against and punished as such . . .

The instruction constitutes the language of the aiding and abetting statute, RCW 9.01.030, defining a principal, and was properly given. See State v. Redden, 71 Wn.2d 147, 426 P.2d 854 (1967). The evidence was conflicting as to the extent of Reese's direct participation in the assault. The jury was entitled, from the evidence in any event, to determine that he was sufficiently involved in the assault, even though he may not have been a direct assailant, as to place him within the definition of a principal in the commission of the assault.

The plaintiff contends the trial court erred in failing to give his proposed instruction No. 5, dealing with police regulations requiring officers to wear their weapons at all times within the city limits. The plaintiff argues that such a regulation is not justified and was a proximate cause of Reese's death.

We believe the contention is without merit. No authority was cited to support the argument against wearing of side arms as off-duty policemen. This appears to be an administrative determination which in no way constitutes an arbitrary or unreasonable regulation contrary to public policy that would be subject to judicial inquiry.

The plaintiff contends the court erred in failing to give the following proposed instruction No. 12:

Every killing of a human being is presumed in law to

be without justification. The burden is on the defendant to come forward with evidence justifying his acts of killing the deceased and the plaintiff is not required to prove to you affirmatively that no such justification existed.

This is a correct statement of the law (*see Jahns v. Clark*, 138 Wash. 288, 244 P. 729 (1926)), but the giving of the instruction was not necessary in view of the instructions given. By instruction No. 2, *supra*, the court in effect directed a verdict in favor of the plaintiff in the event the evidence failed to establish the homicide was excusable or justifiable. The court specifically stated in that instruction, "Plaintiff *may recover unless* the greater weight of the credible evidence establishes that the homicide was excusable or justifiable." (Italics ours.) Implicitly, by the instruction, the burden was on the defendants to establish the homicide was excusable or justifiable. Without such evidence, under this instruction, the plaintiff was entitled to recover.

The plaintiff contends the trial court erred in not instructing the jury on the issue of negligence. Again, under instruction No. 2, *supra*, the issue of recovery under the theory of negligence was not in the case. The issue was whether the homicide was excusable or justifiable. The care the defendant Larsen was required to exercise, in determining whether it was necessary to use deadly force in the manner in which he did to effect the arrest, was adequately covered by the instructions given. The plaintiff, in his argument to the jury, was in no way limited in commenting upon the negligence of Officer Larsen, if any, in this respect.

We have considered all of the assignments of error and any that have not been specifically discussed we deem to be without merit. We are satisfied from this record that the plaintiff was afforded a fair trial.

The defendants for a second time during this appeal have interposed a motion for dismissal for reason of delay in its prosecution. We need not pass upon this motion in view of our disposition of the case.

The judgment of the trial court entered upon the jury verdict is affirmed.

HAMILTON, C.J., ROSELLINI, HALE, and WRIGHT, JJ., concur.

UTTER, J. (dissenting)—I dissent. The majority dismisses appellant's argument that the trial court erroneously refused to instruct the jury on the issue of negligence, holding that negligence is not in the case and that the issue is whether the killing of Robert L. Reese was excusable or justifiable. By so holding, the majority mistakes and misunderstands a major issue.

The issue is not, as the majority states, whether there is excusable or justifiable homicide in the sense these terms are used in RCW 9.48.160. The issue is whether Officer Larsen was negligent in his determination (1) that a felony, and not a misdemeanor, had in fact been committed, (2) that Reese was guilty of that felony, and (3) that Reese was trying to escape. If Officer Larsen was not negligent at any of these points, then the shooting was justified because no negligence was proven. On the other hand, if the jury found Officer Larsen was negligent in any of the above determinations, appellant should have been allowed to recover.

Excusable and justifiable homicide are statutory defenses which allow certain individuals in given instances to be exempt from a charge of manslaughter or homicide in the first or second degree. This is not a criminal case. As the majority states the nature of the case, it is a wrongful death action. Appellant asks for damages caused by the alleged negligence of Officer Larsen and the City of Seattle.

The majority's confusion may be due to the fact that the term "justifiable" has been used by our court to describe their holding that there was a nonnegligent shooting by police officers. *Coldeen v. Reid,* 107 Wash. 508, 182 P. 599 (1919); *Jahns v. Clark,* 138 Wash. 288, 244 P. 729 (1926); *Estes v. Brewster Cigar Co.,* 156 Wash. 465, 287 P. 36 (1930). All of these cases were negligence actions, all dis-

cuss when a police officer is justified in using deadly force, none discuss justifiable homicide in the statutory sense. The statute is not mentioned simply because it is not applicable.

The statutory definitions of justifiable or excusable homicide may be useful by way of analogy in a consideration of whether a police officer has negligently killed another, but they are not directly applicable to a negligence case because those matters considered by a court in a criminal case differ from considerations in an action for negligence.

Specifically, the elements of negligence are (1) the existence of a duty, (2) the breach thereof which was a proximate cause of (3) a resulting injury. *Rosendahl v. Lesourd Methodist Church,* 68 Wn.2d 180, 412 P.2d 109 (1966); *Jurgens v. American Legion,* 1 Wn. App. 39, 459 P.2d 79 (1969).

In the instant case, appellant timely requested a set of specific instructions on negligence which included all of the above elements. These instructions were refused, and the instructions actually given do not include an instruction on proximate cause. A jury instruction on negligence cannot be said to be complete where one of the elements of negligence is missing. Upon the timely request of a party, it is error to fail to instruct the jury properly upon an issue which is pleaded and supported by the evidence. *Sewell v. MacRae,* 52 Wn.2d 103, 323 P.2d 236 (1958).

The complexity of this case, as demonstrated by our widely differing views, makes it illogical to hold that a jury composed of laymen would not be confused by the instructions given. A jury composed of laymen, uninstructed as to the nature of a negligence action as it relates to proximate cause, may have, in an attempt to determine if the shooting was lawful or justified, failed to determine whether the City of Seattle or Officer Larsen was negligent. The refusal to instruct the jury on all elements of negligence is reversible error.

An additional ground for reversal is found in the refusal of the trial court to include plaintiff's requested instruction No. 5, dealing with police regulations requiring officers to

be armed at all times. The City of Seattle goes beyond any statutory requirement that policemen be armed and requires its law enforcement personnel to be armed with deadly weapons without regard to the type of activity in which the armed employee might be engaged. The question of whether, by this regulation, the city negligently placed its citizens in danger of predictable miscalculation on the part of officers who have been drinking, was a jury question, as was the issue of whether the negligence of the city, if any, in this regard was a proximate cause of the death of Mr. Reese.

FINLEY and STAFFORD, JJ., concur with UTTER, J.

NEILL, J. (dissenting)—I concur with the result of the dissent of Justice Utter, but have not signed that opinion as in my view the trial court properly rejected plaintiff's proposed instruction No. 5 pertaining to the police department regulations. In this latter regard I am in accord with the majority opinion.

Petition for rehearing denied December 26, 1972.