# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 75510-2-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| MICHAEL DAVID HENDERSON, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: February 12, 2018 |
| | ) | |

MANN, J. — Michael Henderson appeals his felony murder conviction for the shooting of Abubakar Abdi. Henderson argues that the trial court erred in failing to instruct the jury on both defenses of justifiable homicide and excusable homicide. While the trial court properly instructed the jury on justifiable homicide, we agree with Henderson that the trial court erred in failing to also instruct the jury on the defense of excusable homicide. We reverse and remand for a new trial.

## FACTS

On October 11, 2015, Abdi instigated a verbal altercation with Nekea Terrell at a gas station. Both were intoxicated. Terrell and Abdi were both with a group of friends. The verbal altercation continued as Terrell, Abdi, and their friends moved across the street. Terrell and Abdi's friends attempted to calm them down. Terrell testified that

she thought that there was going to be a fight between herself and Abdi, and was ready to fight him.

Henderson knew Terrell, and at some point, joined the group that was gathered around Abdi and Terrell as they continued arguing. Henderson and Abdi exchanged words, and Abdi asked Henderson if he wanted "to get into it, too?" One of Abdi's friends stood between Abdi and Henderson. Terrell testified that Abdi was acting physically aggressive.

Henderson testified that Abdi "flinched" his shoulders and lunged forward, then stepped backward, and moved his arm towards his waist, seeming to be reaching for a weapon. Henderson drew a handgun out of his pants pocket, pointed it in the direction of Abdi, and fired. The bullet hit and killed Abdi. The shooting was captured on surveillance tape.

The State charged Henderson with second degree felony murder, based on assault in the second degree with a deadly weapon, and with unlawful possession of a firearm. At trial, Henderson requested a justifiable homicide instruction and an excusable homicide instruction. After hearing arguments from both sides, the trial court agreed to include only the justifiable homicide instruction. The jury found Henderson guilty of all charges. Henderson appeals.

## ANALYSIS

*Excusable homicide instruction*

Where a trial court has refused to give a justifiable homicide, excusable homicide, or self-defense instruction, the standard of review depends upon why the trial court did so. State v. Walker, 136 Wn.2d 767, 771-72, 966 P.2d 883 (1998). If the trial

court's refusal was based on a factual dispute, we review the decision for abuse of discretion. State v. Brightman, 155 Wn.2d 506, 519, 122 P.3d 150 (2005). If the trial court's refusal to give the requested instruction was based on a ruling of law, our review is de novo. Brightman, 155 Wn.2d at 519.

At trial, Henderson argued that the inclusion of the excusable homicide instruction was supported under Brightman and State v. Slaughter, 143 Wn. App. 936, 941, 186 P.3d 1084 (2008). Henderson argued that "there is testimony given by Mr. Henderson that allows for consideration of both an excusable and an accidental and a justified claim for lawful use of force." The trial court agreed to instruct the jury on self-defense using deadly force based on Washington Pattern Jury Instruction (WPIC) 16.02.[1] The trial court declined, without explanation, to instruct the jury on the defense of excusable homicide based on WPIC 15.01.

The parties agree the trial court did not analyze whether the excusable homicide instruction was factually supported on the record. Without factual analysis or conclusions with which to review the trial court's decision, we consider de novo whether, as a matter of law, "excusable homicide" is available as a defense to felony murder, and whether the facts in this case support such a defense. Brightman, 155 Wn.2d at 519.

An excusable homicide defense is available only when "committed by accident or misfortune in doing any lawful act by lawful means, without criminal negligence, or without any unlawful intent." RCW 9A.16.030; WPIC 15.01. A justifiable homicide defense is available when the homicide was committed in the lawful defense of the

---

[1] 11 WASHINGTON PRACTICE, WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 16.02 (4th ed. 2016) (WPIC).

slayer when the slayer "reasonably believes he or she is threatened with death or great personal injury." State v. Walden, 131 Wn.2d 469, 474, 932 P.2d 1237 (1997); WPIC 16.02.

The State argued before the trial court that Henderson could not request both a self-defense and an excusable homicide defense instruction. This was incorrect. Washington courts have repeatedly held instructions for self-defense and excusable homicide "are not invariably inconsistent and mutually exclusive." State v. Callahan, 87 Wn. App. 925, 932-33, 943 P.2d 676 (1997); Slaughter, 143 Wn. App. at 945. Inconsistent defenses may be permitted so long as sufficient evidence is presented by either party to affirmatively establish the defendant's theory. State v. Fernandez-Medina, 141 Wn.2d 448, 455-56, 6 P.3d 1150 (2000); see also Brightman, 155 Wn.2d at 526, n.14 (acknowledging that if there is evidence that excusable homicide was predicated on self-defense both instructions are available).

The State now argues that excusable homicide should not be allowed as a defense to felony murder "because the felony murder doctrine is intended to punish accidental killings committed during the course of a felony." The State's argument misunderstands the use of excusable homicide in felony murder cases and the cases that have applied it. While it is true that the fundamental feature of felony murder is that the killing was an unintended consequence of the underlying felony, Washington courts do recognize the defense of excusable homicide in such cases when the defendant argues the felony was committed in self-defense but the killing was an accident.

In Brightman, our Supreme Court explained, "[e]xcusable homicide is the defense that by its plain language is intended to apply to accidental killings, while

justifiable homicide by its plain language applies to killings in self-defense. While a defendant may take actions in self-defense that lead to an accidental homicide, one cannot actually kill by accident and claim that the homicide was justifiable." Brightman, 155 Wn.2d at 525. Thus, in a case where a defendant does something in self-defense that leads to an accidental homicide, the applicable defense is excusable, not justifiable, homicide. Brightman, 155 Wn.2d at 525. The court explained,

> RCW 9A.16.020(3) establishes that the use of force is lawful when the person is about to be injured, so long as the force used is not more than necessary, a defendant could argue that his action that precipitated the accidental killing amounted to lawful self-defense under RCW 9A.16.020(3), even if he could not argue that an accidental killing was a justifiable homicide under RCW 9A.16.050.

Brightman, 155 Wn.2d at 525 n.13.

In Slaughter, this court also approved the use of excusable homicide as a defense to a felony murder charge predicated on assault. 143 Wn. App. at 941. In Slaughter, the trial court gave an instruction on excusable homicide and an instruction defining lawful force as it related to self-defense, explaining that the "lawful force" instruction was included to explain the term "lawful" in the excusable homicide instruction. Slaughter, 143 Wn. App. at 942. This court held the instructions were proper as they affectively allowed Slaughter to argue his theory of the case: "accidental homicide precipitated by an act of self-defense." Slaughter, 143 Wn. App. at 944. We see no reason to diverge from this precedent, and similarly hold that excusable homicide was legally available as a defense to felony murder in this case.

We must next decide whether the evidence supports instructing the jury on the defense of excusable homicide. A defendant is entitled to an affirmative defense

instruction when he or she has raised some evidence, from whatever source, to establish that the killing occurred in circumstances that meet the requirements of that defense. Brightman, 155 Wn.2d at 520; State v. Read, 147 Wn.2d 238, 242, 53 P.3d 26 (2002). When determining if the evidence at trial was sufficient to support the giving of an instruction, the appellate court must view the evidence in the light most favorable to the party that requested the instruction. Fernandez-Medina, 141 Wn.2d at 455-56. Because the defendant is entitled to the benefit of all the evidence, his defense may be based upon facts inconsistent with his own testimony. Callahan, 87 Wn. App. at 933 (citing State v. Gogolin, 45 Wn. App. 640, 643, 727 P.2d 683 (1986)).

Here, the trial court included the justification defense, allowing the jury to find Henderson shot Abdi in self-defense. The question therefore is whether Henderson presented evidence to support his theory that he intentionally fired a warning shot but accidentally shot Abdi.

Henderson consistently testified at trial that he did not intend to shoot Abdi. During direct examination, Henderson testified, "When [Abdi] lunged and I saw him reaching, I fired a warning [shot]. It just so happened it lined up in the direction of Mr. Abdi."[2] When asked what his intention was, he said it was "Basically, to get everybody calmed down. You know what I'm saying? You fire a warning shot, everybody will stop arguing. You look around and get the attention of everybody." Throughout direct examination, Henderson testified that he intended to fire the gun, but did not intend to aim at and shoot Abdi.[3]

---

[2] Report of Proceedings (RP) (June 1, 2016) at 683.
[3] RP (June 1, 2016) at 683-84.

This was reiterated on cross-examination, when the prosecutor asked Henderson what happened after he saw Abdi reach for his waist:

> Q. At that point, you pulled out your gun to fire a warning shot?
> A. Yes.
> Q. How were you intending on firing this warning shot, Mr. Henderson?
> A. In the air.
> . . .
> Q. It's true, is it not, Mr. Henderson, that when you initially pulled the gun out, you pointed at Mr. Abdi?"
> A. Yes.
> . . .
> Q. You moved the gun after initially pointing it at Mr. Abdi, correct?
> A. No.
> Q. So you pulled the gun, and you just fire?
> A. Yes.
> Q. And you believe you are firing in the air?
> A. Yes.
> Q. You feel your hand go up in the air, and you fire?
> A. Yes.[4]

The prosecutor continued,

> Q. And so when you pulled the gun out, you fully intended on firing, correct?
> A. Yes.
> Q. It wasn't an accident that you pulled the trigger?
> A. Yes.
> Q. And your testimony is that your intent was simply to fire it in the air?
> A. Yes.[5]

Henderson later admitted he aimed directly at Abdi before he fired, however, he maintained he intended only to fire a warning shot:

> Q. I'm going to back it up one more time. When you first pull the gun out, isn't it true you first raise it above your shoulder, point it at Mr. Abdi, and then reposition the gun below so as not to shoot Mr. Shamo?
> A. Yes, it is.
> Q. Because you were aiming the gun at Mr. Abdi?
> A. Yes, I was.
> Q. It was not a warning shot, was it, Mr. Henderson?

---

[4] RP (June 1, 2016) at 740-41.
[5] RP (June 1, 2016) at 742-43.

A. It was a warning shot.
Q. It was a warning shot intended to warn Mr. Abdi that you had a bullet in the gun?
A. No, it was a warning shot to let him know to calm down whatever he was reaching for.
Q. You pointed your arm directly at Mr. Abdi and fired, correct?
A. Yes.
. . .
Q. You meant to fire the gun, did you not, Mr. Henderson?
A. I did fire the gun. I didn't mean to fire the gun, but I did fire the gun.
Q. Was it an accident that you fired the gun?
A. Yes, it was.
Q. Previously, you testified when you fired the warning shot that you intentionally pulled the trigger to fire that warning shot. Are you now changing your testimony?
A. No. I said I meant to fire the gun.
Q. I asked you earlier if you intentionally pulled the trigger to fire a warning shot, and you said yes. Now you are saying no?
A. Yes. I'm saying yes.
Q. So you did intentionally pull the trigger?
A. Yes.[6]

On redirect, defense counsel asked Henderson to clarify what happened, and Henderson stated, "Mr. Abdi came forward and Shamo tried to intervene. And I pushed him out of the way and fired a shot, which was supposed to be a warning shot."[7] Defense counsel then clarified and asked, "Did you purposely pull the trigger?" and Henderson said no.[8] Henderson also claimed that someone had bumped his arm, possibly causing him to shoot directly at Abdi.[9]

On appeal, Henderson argues that his testimony was sufficient to support the defense of excusable homicide because he testified that he intentionally acted in lawful self-defense to an imminent injury when he drew his gun and attempted to fire a warning shot, but that the weapon accidentally discharged while it was pointed at Abdi.

[6] RP (June 1, 2016) at 750-52.
[7] RP (June 1, 2016) at 790.
[8] RP (June 1, 2016) at 790.
[9] RP (June 1, 2016) at 789-90.

In this case, the instructions, as given at the trial court, only allowed the jury to find Henderson acted in self-defense in shooting Abdi. Henderson's requested instructions would have allowed the jury to determine that Henderson reasonably drew his gun and fired a "warning shot" in self-defense, and then accidentally shot Abdi. A defendant need only demonstrate "some evidence" in support of an affirmative defense instruction. Walden, 131 Wn.2d at 473; State v. Fisher, 185 Wn.2d 836, 851, 374 P.3d 1185 (2016). Henderson's testimony is evidence in support of the instruction and the jury was "entitled to believe" his testimony. Reese v. City of Seattle, 81 Wn.2d 374, 384, 503 P.2d 64 (1972)

The State maintains excusable homicide is unavailable because Henderson testified he intentionally fired the gun. In Reese, our Supreme Court upheld the giving of an excusable homicide instruction even when "the firing of the gun was not by accident." 81 Wn.2d at 384. The court held excusable homicide was still available as a defense because "the officer was entitled to use deadly force" and the officer testified that he had "aimed at the tires intending to disable the vehicle in which the two occupants were fleeing, and that the shooting of Reese was not intended." Reese, 81 Wn.2d at 384. Thus, intentionally firing the gun does not bar the instruction.

Viewing the evidence in the light most favorable to Henderson, we hold there was some evidence to support the excusable homicide instruction, and the trial court erred in failing to include it. A trial court's failure to instruct the jury on a party's theory of the case, where there is evidence supporting that theory, is reversible error. State v. Birdwell, 6 Wn. App. 284, 297, 492 P.2d 249 (1972).

-9-

### *State v. Townsend*

Henderson argues, for the first time on appeal, that this court should overturn State v. Townsend, 142 Wn.2d 838, 846, 15 P.3d 145 (2001) because it is "incorrect and harmful." State v. Kipp, 179 Wn.2d 718, 727, 317 P.3d 1029 (2014) (before an established rule may be abandoned it must be shown to be both incorrect and harmful). In Townsend, our Supreme Court held it was error to inform jurors of possible sentencing during voir dire, specifically whether the death penalty was being sought. Henderson argues this rule is harmful because it results in the trial court unnecessarily excluding jurors that are otherwise qualified because they oppose the death penalty.

Although the State agrees that the rule in Townsend should be overturned, the State maintains Henderson waived this issue on appeal. We agree that the issue was waived. Moreover, it is not this court's role to overrule established Supreme Court precedent. See State v. Gore, 101 Wn.2d 481, 487, 681 P.2d 227 (1984) ("Once [the Supreme Court] has decided an issue of state law, that interpretation is binding on all lower courts until [the Supreme Court overrules] it.").

### *Additional Assignments of Error*

Henderson also argues the prosecutor committed misconduct during closing arguments and raises several other issues in his statement of additional grounds. Because we reverse on other grounds, we do not address these issues.

We reverse and remand for a new trial.